## J. H. AUST ET AL. *v.* C. ROSENBAUM.

1. CHANCERY PRACTICE. *Supplemental bills. Demurrer.*

   Upon demurrer to bill in equity, the original bill and supplemental bills, if any be filed, should be treated as one pleading.

2. MORTGAGE. *Bill to redeem. Tender.*

   If the object of a bill in equity be to redeem, and not to cancel a mortgage, a previous tender of the sum due is unnecessary, where complainant is unable to know, because of defendant's fault, what sum is due upon the mortgage debt. *Mortgage Co.* v. *Jefferson,* 69 Miss., 464, distinguished.

FROM the chancery court of Noxubee county.

HON. T. B. GRAHAM, Chancellor.

Bill in equity by J. H. Aust *et al.* against C. Rosenbaum, seeking to redeem mortgaged premises. From the decree of the court below denying redemption, complainants appealed. Pending the suit in the court below an effort was made by Rosenbaum to sell the land in controversy under the mortgage, which was in form a deed of trust, and the complainants obtained, on a supplemental bill, an injunction against the sale; but before its actual service the land was sold, and Rosenbaum was declared the purchaser. The facts in reference to this sale were brought before the court, and a decree was made adjudging it void. Rosenbaum prosecuted a cross appeal, and sought to vacate the decree adjudging his purchase invalid. The other facts are stated in the opinion.

*J. E. Rives,* for appellants.

This was a bill to redeem. The bill was filed after the debt

became due, and was not in its nature a bill to enjoin, but simply one to redeem. The bill fully complied with the requisites of a bill for redemption. "A mortgagor can always come into a court of equity and obtain a decree removing the lien of the mortgagee." Pomeroy on Eq. Juris., sec. 1219. What are the essential requisites for maintaining the suit? "The essential requisites for maintaining the suit are that the mortgage debt should be due, and that the mortgagor should offer to pay whatever amount is due, and should pay the same when ascertained and fixed by the decree." *Ib.* Now, in this case there was an offer on the part of complainants to pay whatever amount the court should find to be due; and we ask, further, that the entire tract of land, or so much thereof as may be necessary, be sold to satisfy and pay defendant every dollar that might be found due. But this is not all; the bill was also one for an accounting. What is an offer to do equity? Mr. Pomeroy lays it down as a rule that a complainant is required "to acknowledge, admit, provide for, secure or allow whatever equitable rights the defendant may have." Sec. 388. At no place does the author say that under this rule the complainant should in every case make an actual tender of the full amount due. He recognizes the fact that in some cases the position of the parties, the circumstances and all, would compel a court to say that in order to do equity a tender—an actual tender—would be necessary, while under other circumstances an offer to pay defendant out of the proceeds of the mortgaged property would be a sufficient offer or compliance with the rule.

*T. W. Brame,* for appellees.

There was no offer to do equity on the part of Aust. He did not tender, nor offer to tender, to C. Rosenbaum any amount. It was Aust's duty to offer to pay at least what he thought was due. This he does not do, and his bill and supplemental bill should be dismissed. *Duncan* v. *Moore,* 67 Miss., 136.

On cross appeal the burden is on Aust, to show that the sale

was made in disregard of the fiat of injunction, and that defendants had notice of the writ of injunction before the sale, which notice should be authoritative. The testimony shows clearly that the defendants were not served with notice until after the sale was made.

WOODS, C. J., delivered the opinion of the court.

The original bill, and the first and second supplemental bills, should have been regarded and treated together as one pleading in the court below. Both supplemental bills set up matters transpiring subsequently to the filing of the original bill, and matters, too, arising because of the wrongdoing of the respondents in their disregard for and contempt of the authority of the chancery court. Considered, then, as one complaint, and not as three, as was done below, we find a bill exhibited in a threefold aspect, viz.: a bill for a discovery and an accounting, for relief from usurious interest and for a redemption. The bill, moreover, charged frauds by specific averments, in plain terms, and required an answer, though none was filed with the demurrer to the original and first supplemental bills, nor, in fact, ever filed. Besides the many other charges of the bill, it avers that C. and H. Rosenbaum entered into a combination or scheme whereby they were to secure the mastery over the complainants and their home and plantation, and by a long-continued series of illegal and fraudulent acts be, at length, enabled to overpower complainants and wrest their property from them and convert it to their (respondent's) own use and profit. The bill alleges that, as part of this scheme, H. Rosenbaum was to be made the supply merchant of the complainants, sell them goods at unusual and extortionate prices, charge usurious interest on balances, keep complainants in ignorance of the state of the accounts with him by withholding and refusing to make up and furnish complainants with statements and itemized accounts of their dealings, and, at the end, falsely pretend that C. Rosenbaum had become the owner of the accounts thus

made by complainants with H. Rosenbaum, whereby they (the respondents) were enabled to incorporate into the note given for the $600 actually loaned at the start by C. Rosenbaum, the store account indebtedness of complainants to H. Rosenbaum, and have complainants secure payment of that, with grossly usurious interest, in the same trust deed upon the home and plantation of complainants which inexorable necessity had constrained them to give to secure payment of the $600 loan.

The bill avers that, taking advantage of J. H. Aust's ignorance of business affairs, and of his sickness, and of his reliance upon the good faith of respondents, and of his reliance upon their agreement and promise to correct any errors which might thereafter appear in the store accounts, the store accounts, to the sum of several hundred dollars, were incorporated in the renewal note for the loaned money, and their payment secured by the trust deed which secured payment of that loan. The bill then avers that, despite repeated requests for itemized accounts of their accounts with the store of H. Rosenbaum, they have persistently been refused and denied, and that complainants, by reason of such misconduct on the part of H. Rosenbaum, in refusing to make up and furnish complainants with copies of their accounts, itemized, are unable to say what they really and truly owe upon such accounts, but they aver that, independently of usurious interest, they owe a greatly smaller sum than that whose payment respondents are demanding, and that the difference between the sum really and honestly due and that which respondents claim to be due, grows out of extortionate charges for goods, false charges for goods never purchased by complainants, and failure to give complainants proper credits for payments made; and so they pray a discovery and an accounting first, and then for redemption when they have been enabled to see what their indebtedness really is, after purging the whole debt of its glaring usury.

The bill admits the indebtedness, after being purged of usury, and after false charges for goods never bought have been elim-

inated, and after credits for payments made have been entered, and expresses not only a willingness to pay the debt really due, but prays the court to decree, if necessary, a sale of all the lands embraced in the trust deed (which appear to be worth greatly more than enough to meet and pay any debt that may be found to be due upon an accounting), to satisfy the respondent's just demands. No tender of the money due is made by the complainants.

There was a general demurrer filed to the original and first supplemental bills, because of the failure of complainants to do equity, in that they did not tender with their bill the amount due from them to respondents. This demurrer was sustained, and the original and the first supplemental bills were dismissed.

The question presented by the appeal from this decree of the court below is, was an actual tender of the amount due, with lawful interest, essential to the maintenance of this bill, on the very peculiar facts disclosed in and by all the bills—the original, and the first and second supplemental—it having already been said that they should have been regarded and treated as one pleading?

It is to be observed that this is not an equitable proceeding for the cancellation of a mortgage, nor for relief against one cent that may be found to be legally due. The case of *Mortgage Company* v. *Jefferson*, 69 Miss., 770, upon which the court below rested its rulings, as we have reason to believe, does not answer our question, is distinguishable from this case at a glance, and is not authority for the decree below. In Jefferson's case, cancellation of a contract claimed to be usurious and void, was sought in our courts by Jefferson, but as he confessedly had the money of the mortgage company in his pocket, our holding was that he must do equity before we would cancel the deed— that is, that he must tender the money which he admitted he had from his adversary, with lawful interest, and then we would decree cancellation of the usurious and void contract. But that is not the present case. The complainants do not ask cancella-

tion of the trust deed which their adversary holds; they do not deny their indebtedness, nor pray to be relieved against it. On the contrary, the complainants admit that they are justly indebted to respondents, but they are unable to say in what sum they are indebted, by reason of respondents' refusal to furnish them with their accounts, and they do not make tender because they cannot make tender of an uncertain sum. In a word, they do not make tender because their adversary's wrongdoing had made it impossible for them to do so. By the averments of the pleading it is plain that the uncertainty as to the amount due grows out of the deliberate fault of respondents. But it is suggested in brief of counsel for respondents that the complainants might and should have tendered $600, with lawful interest, and such sum on the store accounts as they knew and admitted to be due. The answer to this is twofold: (1) The tender of only a part of what may be found to be due would be no tender. It is a tender of the full amount, principal and interest, which is required, and which the respondent may accept and walk out the court with, without litigation, delay and costs. (2) No tender could have been made of any sum due on the store accounts. These had never been furnished to complainants, and it was impossible for them to know what amount was due, and equally impossible for them to tender an unknown sum.

We recur, then, to the consideration of the correctness of the action of the court below, in holding a tender essential with a bill to redeem.

It has been held by high authority that no tender is necessary in a case for redemption. *Quin* v. *Brittain & Jones*, Hoff. Ch. Rep., 353; *Beach* v. *Cooke*, 14 N. Y., 508. In the recent case of *Cassely* v. *Witherbee et al.*, 119 N. Y., 522, this view is broadly sustained. Said the court: "As a condition to his right to maintain this action, it was not necessary for the plaintiff, before commencement thereof, to tender or offer to pay the balance due upon the mortgages. Nor was it necessary for him in his complaint to offer to pay the amount which should be found due. There are,

undoubtedly, authorities laying down the rule in general terms, that before an action to redeem from a mortgage can be maintained, the mortgagor must either tender the amount due upon the mortgage, or offer to pay the amount in his complaint. But it has never been so decided in this court, and we think it is now the settled law of this state, under our present system of pleadings, that the allegation of such tender or offer is unnecessary. It is certainly not necessary to allege that a tender or offer to pay the amount due upon the mortgage was made before the commencement of the action; and an offer in the complaint is, at most, a technical matter, serving no substantial purpose, because, in the judgment given in such an action, the court always holds that redemption can be had upon payment of the amount due. The tender and offer are important only as they have bearing upon the question of costs. The mortgagor's right of redemption is not dependent upon his offer or tender of payment. It exists independently thereof and antecedently thereto. . . . Payment upon redemption, and as a condition of redemption, can be enforced in the action, and the dismissal of the complaint in such action, on default of payment under the judgment, as a condition of redemption, operates as a foreclosure.'' It must be admitted, however, that the current of authority is against this view. Conceding, then, for our present purposes only, that the general rule is that a tender is necessary for the successful maintenance of a bill to redeem, it does not follow that the general rule is rigid and inflexible and without its exceptions. There must be exceptions to the rule, unless justice is to be sacrificed, now and then, to technical rules, and rules of pleading at that. How can one tender where redemption is sought by an infant who has nothing with which to redeem except the mortgaged estate, and when it appears that the mortgaged estate is largely in excess, in value, of the debt secured, and that a sale of only a part of such estate will suffice to pay the creditor's demands? This presents an exceptional case to the rule, and this very case has been recognized as an exception,

thereby demonstrating that the rule is not inflexibly rigid. See *Johns* v. *Smith,* 56 Miss., 727. So, too, in cases where an accounting is shown to be necessary to ascertain the amount due, and especially where the amount is not known to the party seeking redemption, and cannot be ascertained by him because of the fault of his adversary in refusing to furnish information which it was his duty to furnish, an exceptional case is presented whose peculiar facts take it out of the general rule. For shall any man be required by any rule to perform an impossible act? And this last is the case in hand. The decree of the court below, in sustaining the demurrer to the original and first supplemental bills, was erroneous. They, with the second supplemental bill, should have been treated as a whole, and the demurrer should have been overruled. It follows, of course, that the action of the court below in excluding all the evidence directed to the main issues made by the bill and its supplementary parts, though consistent with the court's former action in sustaining the demurrer, was erroneous, as that former action itself was erroneous. The respondents should have been required to answer the charges of the bill, and to have made discovery as to the true state of the accounts of H. Rosenbaum with complainants, and, if then necessary, an accounting should have been decreed, and for whatever amount thus found to be due there should have been a decree for a sale of the lands to satisfy this amount. Of course, if the complainants had failed to sustain their bill by proper evidence, and the whole amount demanded by respondents had appeared to be due, the bill and supplementary bills should have been dismissed, and such decree would, in effect, have been a decree for foreclosure of the mortgage. We deem it unnecessary to go further, as the foregoing views will be sufficient guide for the court in the further progress of the cause. The decree dissolving the injunction and awarding damages and costs were likewise erroneous.

Reversed and remanded on direct appeal, with leave to respondents to answer within thirty days after mandate filed, and with leave to both parties to take further evidence, if desired. The decree on cross appeal is affirmed.