WESLEY B. PEEPLES ET AL. v. BRANDON I. YATES ET AL.

[40 South. Rep., 996.]

1. CHANCERY PRACTICE. *Amended bill. Demurrer. Supreme court practice.*

On appeal from a decree overruling a demurrer to an amended bill the supreme court will not consider the evidence taken in the case.

2. ACCOUNTS. *Re-statement. Fraud. Trust deed.*

In a suit to restrain the foreclosure of a deed of trust, given to secure a debt based upon several annual mercantile accounts, an allegation in the bill of complaint that the beneficiary, who kept the accounts, had credited complainants for several years with a materially less price per pound for a goodly number of bales of cotton each year than he had received for the same, the cotton having been delivered to him for sale that the proceeds might be credited to complainants, is a sufficient charge of fraud to authorize a re-statement of the accounts.

3. SAME. *Injunction. Validity of debt.*

Where a bill to restrain the foreclosure of a deed of trust given to secure an account stated, averred that the account contained illegal charges for usury, for intoxicants illegally sold, and for goods charged at exorbitant prices instead of cash prices, as agreed, it is not demurrable, since it sufficiently shows that the entire account is not predicated of a valid debt.

4. SAME. *Conclusiveness.*

An account stated is not in general conclusive, but only *prima facie* proves the accuracy and correctness of the items included therein.

5. CHATTEL MORTGAGES. *Foreclosure. Attorney's fees.*

Where a trust deed in the nature of a chattel mortgage provided for payment of attorney's fees in case of foreclosure, but defendants' refusal to make out an itemized statement of the account secured and their demand for more than was due, made it impossible for complainants to pay what was in fact due, they were not entitled to attorney's fees.

6. SAME. *Injunction to restrain foreclosure. Fraud.*

Where a bill to restrain forclosure of a trust deed charged that defendants were undertaking to enforce the same and to sell the

88 Miss.—19

property embraced therein for an amount largely in excess of what was due thereon, and for an unlawful and usurious debt, complainants were entitled to an injunction without a more specific allegation of fraud.

7. SAME. *Tender of amount due. Sufficiency.*

Where, in a suit to restrain foreclosure of a trust deed, complainants offered to pay whatever might be found due, if anything remained unpaid after the account was restated and purged of illegal charges and credited with items claimed, and the bill charged that it was impossible for complainants to make any further tender, because they did not know what amount was due, resulting from defendants' willful refusal to render a statement of the account, no further tender was necessary to entitle complainants to an injunction.

8. SAME. *Parties to suit. Beneficiary dead.*

A suit to enjoin the foreclosure of a chattel mortgage or deed of trust, the beneficiary being dead:

(*a*) May be brought against the heirs of the decedent, they being the only necessary defendants where an executor or administrator had not been appointed on the estate; and

(*b*) The appointment of an executor or administrator on the estate is unnecessary pending the suit, since it is competent for the court to order any sum found due to be paid into court and retained until some person duly authorized to receipt for it shall be appointed and qualified.

FROM the chancery court of Noxubee county.

HON. JAMES F. McCOOL, Chancellor.

Yates and another, the appellees, were complainants in the court below; Peeples and another, the appellants, were defendants there. From a decree in complainants' favor the defendants appealed to the supreme court. The facts are fully stated in the opinion of the court.

*Frank Johnston, W. T. Houston,* and *H. H. Brooks,* for appellants.

The amended bill shows that there was an account stated in January, 1904, between the complainant and Mrs. Peebles, through her husband and agent, at Vienna, Alabama, in which a

balance of $343.62 was found to be due to Yates on the open account. This was paid in full by being credited on the Dent note held by Mrs. Peebles.

Thus the account stated was fully executed and nothing was left between the parties except the Dent note.

There had been a former account stated in 1902 for the years 1899, 1900, and 1901. There was no fraud or mistake in either one of these settlements.

The alleged overcharges, the failure to give all possible credits, the weights and prices of the cotton and the alleged charges for intoxicants are all closed by the account stated. We are not aware of any law which authorizes a recovery back of money paid for intoxicants. There is nothing in the statement of the balance on the Dent note showing any usurious charges. The bill does not point it out specifically. The deed of trust fixes the trustee's fee, and not an attorney's fee, at ten per cent. This is clearly a proper charge.

Thus, the only question is whether a bill can be maintained against the heirs of Mrs. Peebles to open up the two accounts stated and recover back alleged usurious payments.

The bill and the amended bill do not show that there has been any administration on Mrs. Peeples' estate. This is shown in the record, but not in the bill or amended bill, and cannot be considered on the demurrer to the amended bill.

The case stands on the bill as amended, and the demurrer as one where the complainant is seeking to have an accounting in equity with the devisees of the decedent without making the administrator a party defendant.

An administrator is a necessary party to a proceeding of this character. The rule which requires all parties interested in the subject of a suit should be made parties to the bill, applies to all cases in which an account is sought against a defendant. 1 Daniels on Chancery Pleading and Practice (4th ed.), 216.

So far as the bill and amended bill are concerned they fail to show who is the administrator, or that there has been any admin-

istration on Mrs. Peebles' estate.     Considered on the demurrer, this is a proceeding for an accounting against the estate of a decedent without making the personal representative a party.

There is another view which the court is asked to consider. The second account stated has been fully satisfied and executed by a settlement of the balance by crediting it on the Dent note. This proceeding is in effect to recover back the alleged usurious charges in the account.     Should not the complainants sue at law for the usury, if any ?     The averment that the complainant cannot tell specifically the extent of the usurious charges without an itemized statement of the account can be met by the answer that an administrator could be made to produce the books by the process of a court of law as well as a court of equity.

*Frank A. Critz,* for appellees.

The case is presented upon the demurrers to the original bill as amended.     No question can be raised as to the ruling of the chancellor in overruling the motion to dissolve the injunction, because an appeal from that ruling was not taken within the time prescribed by the statute, and more especially, for the reason that since the chancellor's ruling upon that motion, the bill has been amended as to very important and material matters.     It certainly would be wholly illogical for the court to take up and consider the rulings of the chancellor on the motion to dissolve, which was made upon the answer of W. B. Peebles and the affidavits, because the status of the parties has been entirely changed and said answer of W. B. Peebles, as above stated, has been waived by said demurrers, and the said answer of W. B. Peebles is entirely out of the case and should not have been included in the record ; nor should the record have contained the two motions to dissolve the injunction, the notice to take affidavits, and the affidavits used upon the motion to dissolve, the exceptions to the answer of W. B. Peebles, nor the decree refusing to dissolve the injunction.

The authorities generally concur in the declaration that any

amendment of the bill after answer authorizing the defendant, though not required to answer, to put in an answer, making an entire new defense and contradicting his original answer, if he desires to do so. *Davis* v. *Davis,* 62 Miss., 820; 1 Daniel Chan. Pl. & Pr., 409.

A stated account is defined to be an agreement after an examination of the accounts between the parties that the items are true and the balance struck a just and true balance. *Anding* v. *Levy,* 57 Miss., 62; *Stebbins* v. *Niles,* 26 Miss., 267; *Davis* v. *Tiernan,* 2 How., 786; *Reinhardt* v. *Hines,* 51 Miss., 346; 1 Am. & Eng. Ency. Law (2d ed.), 237, and note 1.

Under this rule it seems that a stated account implies not only that the balance is agreed upon but that each specific item is agreed upon. 1 Am. & Eng. Ency. Law (2d ed.), 443, and note 2.

But "an account stated is not, in general, conclusive. Its effect is to establish *prima facie* accurateness and correctness of the items, and it seems that strength of the presumption of correctness depends, to some extent, upon the circumstances of the case." 1 Am. & Eng. Ency. Law (2d ed.), 458, and note 2; 459, and note 1.

Since the statement of accounts must rest upon subsisting indebtedness, it follows that a claim void by reason of illegality or immorality, in consideration, will not support an account stated. 1 Am. & Eng. Ency. Law (2d ed.), 442, and note 1.

The liability upon a stated account, like the liability upon any other contract, must be based upon a legal consideration, so that if there be any items in the account based upon an illegal consideration, it is impossible to make an agreement as to such items, which a court of equity would enforce.

An account stated simply relieves the person asserting it from making proof of the items and of the balance due, and in no case is it of any more force than the itemized account would be if all the items therein were established by proof. Such proof would, of course, show that part of the items were usurious and part for

whiskey, sold unlawfully, and hence as to such items there could be no recovery, notwithstanding the fact that the proof showed that the whiskey was purchased and that the usurious interest was charged for the amount due upon the account.

"When some of the items of an account stated are shown to be usurious, the account may be opened and corrected as to them." 1 Am. & Eng. Ency. Law (2d ed.), 465.

An account stated certainly could not rise higher than a promissory note. Our supreme court holds that if a promissory note is given in satisfaction of an open account, part of which is for items of vinous and spirituous liquors, unlawfully sold, that the illegality of the whiskey items vitiates the whole note. *Cotton* v. *McKenzie,* 57 Miss., 419, 423; *Caradine* v. *Wilson,* 61 Miss., 573.

The contracts as to the items in the accounts were made at Vienna, Alabama, and must, therefore, be controlled by the Alabama statute.

The statute of Alabama makes void contracts for whiskey sold without license. Code of Alabama, secs. 3522, 3524.

The appellants are not entitled to any attorney's fees in this case. The failure of appellees to settle these matters was occasioned by the fault of W. B. Peebles, as against B. G. Peebles, and in no case can attorney's fees be recovered for the non-payment of debt, when the creditor is the party in default.

Argued orally by *Frank Johnston* and *H. H. Brooks,* for appellants.

Mayes, J., delivered the opinion of the court.

In July, 1904, B. I. Yates and others filed a bill in the chancery court of Noxubee county against W. B. Peebles and others. The bill charges that on the 3d day of December, 1898, B. I. Yates and his wife, Mrs. T. O. Yates, executed a deed in trust on certain property therein described to one John R. Dinsmore, trustee, to secure a note of B. I. Yates for $1,400, payable to Dr.

E. C. Dent, one year after date, with interest at ten per cent per annum until paid.    The deed in trust is made an exhibit to the bill.    The bill then charges that in the latter part of 1902, or the early part of 1903, Mrs. B. G. Peebles, the wife of W. B. Peebles, one of the defendants in the bill of complaint and the mother of W. B. Peebles, Jr., E. B. Peebles, and Darweight Peebles (also made defendants to the bill of complaint, the last three named being minors and the children of W. B. Peebles and Mrs. B. G. Peebles, and without a guardian appointed in this state), paid the full amount due E. C. Dent and had him transfer the deed in trust named above to her, the said Mrs. B. G. Peebles; that afterwards complainant B. I. Yates paid to Mrs. B. G. Peebles the sum of $1,400 on said note.    The bill then charges that during the years 1900, 1901, 1902, and 1903, Mrs. B. G. Peebles was a merchant doing a general mercantile business at Vienna, Pickens county, Alabama, and her husband, W. B. Peebles, was her agent and had full and complete management of her business; said business being conducted in the name of Mrs. B. G. Peebles; that during the whole of said above period the complainant purchased his family and plantation supplies from Mrs. B. G. Peebles, and obtained some money from her to be used on his plantation for supply purposes, and from time to time paid her in cotton raised by him on his plantation; that in January, 1902, complainant had a settlement with W. B. Peebles, the husband and representative of Mrs. B. G. Peebles, for the years 1900 and 1901, and by that settlement it was ascertained that complainant was indebted to Mrs. B. G. Peebles in the sum of $234, which amount was distinctly agreed to by both sides; that the above amount of $234 was due on the store account and did not include any part of the debt due under the deed in trust given to Dent, which was afterwards transferred to Mrs. B. G. Peebles; that in the fall of 1902, complainant turned over to Mrs. B. G. Peebles twenty-one bales of cotton, to be held by her subject to the order of complainant, and not to be sold except with the consent of the complainant; that W. B. Peebles, agent

of Mrs. B. G. Peebles, sold the cotton in violation of complainant's agreement with Mrs. B. G. Peebles, and rendered no account of the cotton to complainant, nor did he report the fact of the sale to Mrs. B. G. Peebles; and that complainant did not know of the sale until long afterwards. On the 30th day of March, 1903, W. B. Peebles, as the agent for his wife, Mrs. B. G. Peebles, proposed to complainant that complainant B. I. Yates and his wife, Mrs. T. O. Yates, should give a note and deed in trust to Mrs. B. G. Peebles for $3,500, to cover any balance that might be due on the store account, and any balance due on the Dent note, and to also cover any account for supplies that complainant might make with Mrs. B. G. Peebles for furnishing during the current year, 1903; that it was then and there understood that the $3,500 note should include the Dent note and be in lieu of it. Pursuant to the understanding thus had, complainant and his wife executed to W. B. Peebles, as the agent of his wife, Mrs. B. G. Peebles, the deed in trust for $3,500, payable on January 1, 1904, with interest at ten per cent per annum. Complainants charge that B. I. Yates was not indebted to Mrs. B. G. Peebles in the sum of $3,500 at the time said deed in trust was executed, including all supplies that were thereafter furnished for the year 1903; that in the fall of 1903 complainant turned over to Mrs. B. B. Peebles twenty-one bales of cotton, with the distinct understanding that it should be held subject to the order of sale of B. I. Yates, the proceeds to be applied to whatever was due under the $3,500 deed of trust before mentioned; that W. B. Peebles, agent for his wife, Mrs. B. G. Peebles, in violation of said agreement, sold all of said cotton in November, 1903, and at a loss to complainants of $10 or $12 per bale; that W. B. Peebles was acting for his wife and principal, Mrs. B. G. Peebles, and had full and complete power to act in all matters for her; that complainants have made repeated demands on W. B. Peebles, agent as aforesaid, for an itemized account of his indebtedness, and for an account of the cotton so sold by the said W. B. Peebles as aforesaid, but the said W. B. Peebles persistently and will-

fully refuses to give him same; that complainant notified W. B. Peebles on the 1st day of January, 1904, that he was ready to pay whatever might be due Mrs. B. G. Peebles under said deed in trust, including all that was due on the Dent note, but that before paying same W. B. Peebles must give complainant an itemized account of same, but said W. B. Peebles willfully and persistently refused to give same; that while at the store for the purpose of getting the itemized statement as aforesaid, complainant examined the books of Mrs. B. G. Peebles, in the absence of Mr. W. B. Peebles, he having purposely absented himself to avoid giving the itemized statement of the account requested by complainant, and while examining the account found himself charged with many illegal items; that the goods he had bought were charged to him at exorbitant prices, when the understanding was that complainant was to be charged cash prices; that complainant is charged with interest at ten per cent when he should have been only charged with six per cent. Complainants charge that there are now twenty bales of cotton on hand of the crop of 1903, which said cotton is embraced in the deed in trust heretofore mentioned and liable to it, and that complainants could have sold cotton at sixteen and one-half cents per pound; but, because defendants refuse to render to him an account of the amount due, he is prevented from selling said cotton, because he would render himself liable under the criminal laws of the state, and that this cotton and all the business of complainants is tied up because defendants refuse to render the statement of the account as aforesaid, and their refusal to make a fair and honest settlement with complainant; that in the early part of January, 1904, Mrs. B. G. Peebles died, leaving a last will and testament, and leaving as her only heirs her husband, W. B. Peebles, and the minor children named above; that there has been no executor or administrator appointed for the estate of Mrs. B. G. Peebles, and that there is no one legally authorized to make a settlement of the matters in controversy, or give any receipts; that on the 30th day of January, 1904, and after the death of Mrs. B. G. Peebles,

W. B. Peebles rendered a statement to complainants in which he claimed that there was a balance due on the transactions set forth above of $1,708.14, and demanded payment of same; that said statement shows, according to his claim, that the entire store account had been paid, leaving a credit of $343.62, which said amount is credited on the account due on the land, leaving all of said $1,708.14 is due upon said $3,500 note and deed in trust, meant said Dent claim, and said W. B. Peebles still claims that said $1,708.14 is due upon said $3,500 note and deed in trust, and complainants are liable to pay attorney's fees upon said balance claimed by Exhibit C; that on the 18th day of July, 1904, E. C. Patty, trustee, under the direction of W. B. Peebles, advertised all the property described in said $3,500 mortgage, Exhibit B to the bill, for sale on the 8th day of August, 1904. Complainants charge that said W. B. Peebles has no authority to make settlement of the amounts involved, and has no authority to collect or receipt for any balance that may be due from complainants; that neither W. B. Peebles nor the trustee has any right to have the property sold under the trust deed and the advertisement for sale is illegal and unauthorized by law; that no steps can be taken to foreclose said deed in trust, or have said property sold thereunder, until an administrator or executor has been appointed and qualified; that they do not owe the amount of $1,708.14 demanded in said statement, and do not owe said attorney's fees, and that in said $1,708.14 are included illegal, usurious, and exorbitant charges heretofore referred to, but because defendants persistently and willfully refuse to give complainants an itemized statement of the account it is impossible for them to specifically name what items embraced in the statement of the account are illegal, usurious, and exorbitant; that complainants are ready and anxious to pay whatever balance was due on the 1st day of January, 1904, and have only failed to pay same because of the refusal of W. B. Peebles to make a fair and honest statement of the account; that all of the property advertised for sale is in possession of complainants, and never was in

possession either of the trustee or the beneficiaries under the trust deed; that a sale of the property under the $3,500 deed in trust would be unjust and unlawful, and would cast a cloud or suspicion on the title of complainants and bring them irreparable injury, and unless they are enjoined said property will be sold for the amount unjustly and illegally demanded. The prayer is for an injunction restraining the sale, for the appointment of an administrator or executor authorized to receipt for any balance that may be due, and for an accounting between complainants and defendants for the purpose of ascertaining whether there is anything due under the deed in trust. The bill is sworn to on the 30th day of July, 1904, and an injunction granted on the 1st day of August, 1904.

At the October term, 1904, W. B. Peebles, answering for himself, denied all the material allegations of the bill, and an answer was formally filed by E. C. Patty, trustee. A motion was made to dissolve the injunction, and affidavits of various parties were taken and read on the hearing of same. On the 30th day of November, 1904, the chancellor rendered a decree overruling the motion to dissolve the injunction, and requiring the defendant to answer and file with his answer a complete itemized statement of all dealings had with complainants. This decree was not appealed from. Afterwards, on the 20th day of February, 1905, the complainants obtained leave of the court to file an amended bill of complaint. The amended bill is in substance about the same as the original bill of complaint, except that it points out certain items claimed to be illegal charges, and states that in the statement rendered there are certain illegal charges for whiskey sold in violation of the law, and charges of usurious and compound interest, and other illegal and usurious charges which cannot be specifically pointed out until complainants have been enabled to get the itemized account from the defendants, which they refuse to give them; that in the settlement of January, 1902, defendant took credit for all these illegal, usurious, and exorbitant charges; that the twenty-one bales of cotton turned over to said W. B.

Pcebles, as alleged in the original bill of complaint, are credited to the complainants upon said books at seven and one-half cents per pound, and upon the said books of defendant, complainants are charged with the freight for the shipment of same, and the commissions paid to the commission merchants for the sale of same, and the insurance upon said cotton while in transit from Vienna to Mobile, whereas, as a matter of fact, said cotton was sold by defendant W. B. Peebles for eight and nine and one-half cents per pound; that defendants are unlawfully demanding an attorney's fee for the collection of said debt, when as a matter of fact the debt would have all been paid but for the fault of the defendants themselves.    Defendants offer to pay any balance that may be found due, but allege that they cannot tender any specific amount until they have an accounting and find what is due, if anything.    The prayer is for an accounting between the parties and that defendant be required to file with the answer an itemized account of all the transactions.    To the bill as amended a demurrer was interposed at the April term, 1905, setting up the following causes of demurrer, viz. : "(1) The bill as amended shows that the account which the complainants seek to have restated has been stated and agreed upon between complainants and defendants, and by complainants, through B. I. Yates, paid in full by settlement with and payment to demurrant.    (2) There is no allegation that defendants are insolvent, or unable to respond to any decree or judgment that complainants could recover against them.    (3) The amended bill shows that all the property is in complainants' possession, beyond the recall of defendants or their trustee, or a purchaser from them or either of them.    (4) The complainants, if they desired an accounting, in the absence of a legally qualified executor or administrator, should have secured the appointment of one as the statute provides, as W. B. Peebles' agency ceased with the death of his wife, and he cannot act for the children, who cannot act for themselves. (5) The amended bill fails to aver that there was any fraud, or mistake, or mutual mistake, in the settlement and payment of the

store account.   (6) The amended bill shows that complainants could have paid off the sum claimed under protest and recovered the excess at law.   (7) The complainants fail to tender any amount, while admitting that an amount is due the defendants. (8) There is no sufficient allegation or irreparable injury or facts to indicate it.   (9) There is no allegation in the amended bill to indicate how the defendants acquired or have possession of the account, an itemized statement of which is sought."

On the 27th day of April, 1905, the court overruled the demurrer and in its decree required W. B. Peebles to answer the amended bill of complaint within sixty days, and to exhibit with his answer a complete itemized statement of the amount involved in the suit, and all other defendants are given sixty days to answer.   From the decree overruling the demurrer to the bill as amended an appeal is prosecuted to this court; the order reciting that an appeal is allowed for the purpose of settling the principles of the case.   The following is the assignment of error, viz.: "(1) The chancellor erred in overruling the demurrer to the bill of complaint.   (2) The chancellor should have sustained the demurrer and dismissed the bill.   (3) The chancellor erred in overruling the motion of defendants to dissolve the injunction."

The decree appealed from is the decree overruling the demurrer to the bill of complaint as amended, and it is to that decree alone that we shall address ourselves on this appeal.   In determining whether or not the decree of the chancellor is correct, we cannot look to the testimony taken before the amendment on motion to dissolve the original bill of complaint, but we consider only the bill of complaint as amended, the demurrer filed thereto, and the decree thereon.   *Hardie* v. *Bulger,* 66 Miss., 577 (s.c., 6 South. Rep., 186); *Davis* v. *Davis,* 62 Miss., 818.

In passing upon the other questions in this case it will be well to remember that the case is before this court on an appeal from a decree of the court below overruling a demurrer filed thereto, and we treat the essential allegations of the bill as confessed by appellants.   In this view of it the bill alleges that in January,

1902, complainants and defendant W. B. Peebles, acting for his wife, Mrs. B. G. Peebles, had a settlement of the accounts for the years of 1899, 1900, and 1901, showing a balance due by complainants of $234.10, but that in said accounts leading up to the settlement were many charges of illegal items and items for whisky sold in violation of law, for all of which these complainants should be credited, thereby reducing the balance found due in January, 1902; that they cannot state specifically the items, because defendant W. B. Peebles refuses to give them an itemized statement of the accounts; that in the accounts for 1902 and 1903 there are charges of usurious interest; that the goods sold are charged at exorbitant prices, whereas it had been agreed that they should be charged at cash prices; that all the illegal, usurious, and exorbitant charges are brought forward and incorporated in the $1,708.14 demanded from complainants as being the amount due the defendants; that there is demanded of complainants the sum of $180.42 as attorney's fees, when as a matter of fact complainants have ever stood ready to pay whatever was justly due, and their failure to do so has been occasioned by the wrongdoing of the defendants themselves in demanding more than was justly due them, and the refusal of defendants to render them an itemized statement of the account, to the end that complainants might ascertain the amount due and pay same. The bill charges that W. B. Peebles sold the cotton of complainants at eight and nine and one-half cents and only gave complainants credit for seven and one-half cents. Under the allegations of this bill, should the court require an accounting?

In the case of *Peteet et al.* v. *Crawford,* 51 Miss., 43, it is said: "Mere errors alone will not always lead to the opening and restating of accounts; but even when there is an agreement that closed accounts shall not be opened for error after death of the parties, or after a fixed period, a court of equity will open and restate the account for fraud, or great danger of fraud." Again, in the same opinion, it is said: "If the bill praying for the opening of a settled account does not allege fraud, but in the opinion of the

court the facts stated imply fraud, the prayer will be granted."
When it is alleged in the bill that Peebles sold complainants'
cotton at eight and nine and one-half cents per pound, and only
gave complainants credit with seven and one-half cents, though
the fraud be not specifically charged, we are of the opinion that
the facts stated strongly "imply fraud." But, even if the facts
as stated in the bill did not strongly imply fraud, it is the very
essence of a stated account that it rest upon a valid debt. The
bill in this case charges that the so-called stated account is based
upon unlawful, usurious, and exorbitant charges. A stated
account is not a sacred thing, rendering it unassailable when it
is made up of unlawful and usurious charges, as is charged in the
bill of complaint. Like the original account which forms its
predicate, it may be purged of all such items. 1 Am. & Eng.
Ency. Law (2d ed.), 442 (2) ; *Dunbar* v. *Johnson,* 108 Mass.,
519 ; *Melchoir* v. *McCarty,* 11 Am. Rep., 605, and other cases
cited, note 1, p. 442, Ency. Law (2d ed.), vol. 1. Also see Cyc.,
vol. 1, p. 458, par. (E), and citations thereunder. As stated in
1 Ency. Law (2d ed.), p. 458, par. 3 : "An account stated is not
in general conclusive. Its effect is to establish, *prima facie,* the
accuracy and correctness of the items, and it seems that the
strength of the presumption of correctness depends to some extent
upon the circumstances of the case." We do not undertake to
say what particular items should be stricken from the account, or,
indeed, that anything should be stricken out of the account ; but
we say that under the allegations of the bill the complainants are
entitled to have a restatement of the account and to have it purged
of all usurious, exorbitant, and illegal charges, if there are any,
and if upon final proof it develops that the defendants them-
selves, because of their refusal to make out the itemized statement
of the account, and because they have demanded more than was
due, have made it impossible for the complainants to pay what-
ever may be found due on the final hearing, then the defendants
are not entitled to any attorney's fee, and the account should be
still further purged of this charge. But these are questions for

the chancellor to decide when the proof is all in, and we indicate nothing here except as to the method of stating the account.

Under the allegations of the bill the remedy by injunction is the proper and only adequate remedy. The bill charges that the defendants are undertaking to enforce their deed in trust and to sell the property embraced thereunder for an amount largely in excess of what is due thereon, and for an unlawful and usurious debt. Under such circumstances complainants are entitled to the injunction and fraud need not be specifically alleged. *Carey et al.* v. *Fulmer et al.,* 74 Miss., 729 (21 South. Rep., 752); *Hooker* v. *Austin,* 41 Miss., 717.

Under the case as made by the pleadings it was not necessary for complainants to make a tender with the bill other than that which they do make. They are not seeking a cancellation of the deed in trust and offer to pay whatever may be found to be justly due, if anything remains unpaid after the account is restated and purged of the illegal charges and credited with certain items it is claimed that they should be credited with. The bill alleges that it is impossible to make any further tender because complainants cannot tell what amount is due, and all this because of the defendants' own wrongdoing in willfully withholding the statement of the account from them, whereby it would be possible for them to ascertain the exact amount due and tender it. *Aust et al.* v. *Rosenbaum,* 74 Miss., 893 (21 South. Rep., 555, in that part of opinion found on page 897 at bottom of 74 Miss., and page 558 of 21 South. Rep.). See, also, *Purvis* v. *Woodward,* 78 Miss., 922 (29 South. Rep., 917, in that part of opinion to be found on page 929 of 78 Miss., and page 919 of 29 South. Rep.), and authorities there cited.

The heirs of Mrs. B. G. Peebles and the trustee are proper and necessary parties, and they are the only necessary parties, so far as it is shown by the allegations in the bill. The bill shows that there is neither an administrator nor an executor appointed for the estate of Mrs. B. G. Peebles. It alleges that the trustee, act-

ing under the direction of W. B. Peebles, one of the heirs of Mrs. B. G. Peebles, is advertising the property for sale and will sell same unless restrained by the court.    Under the case as made by this bill the powers of a court of equity would indeed be limited if it could not interpose its writ of injunction and prevent the heirs of a deceased party from thus beclouding the title of property, advertising and selling it for a debt claimed to be unlawful and usurious, and under circumstances which, according to the bill of complaint, leaves it doubtful whether there is any debt at all due from the complainants, simply because the heirs of the decedent fail or refuse to have a representative appointed for the estate.    In the language of the court in *Patty* v. *Williams,* 71 Miss., 837 (15 South. Rep., 43, in that part of the opinion to be found on page 841 of 71 Miss., and page 44 of 15 South. Rep.), "Equity rises above such fetters, disregards merely useless forms, and looks only to the substance, and hence requires only those to be parties who have some concern in the litigation, or whose presence is required to do complete justice between the parties." *Patty* v. *Williams, supra;* 1 Pomeroy (3d ed.), sec. 114.    Nor is it necessary for the court, so far as this case is concerned, to appoint an administrator or executor to represent the estate as is prayed for in complainants' bill.    The cause may proceed to final decree, and if it be ascertained that any amount is due the estate of Mrs. B. G. Peebles after the accounting is had, the amount so found to be due is in the custody of the court and may be kept in charge until some person duly authorized to receipt for same has been qualified, and it can then be paid to such person; but the absence of such person and the failure of the heirs to procure the appointment of such person can never be their warrant for the commission of a wrong, or serve as an impediment to complainants in the enforcement of their rights. We do not lay it down as a broad rule that in every instance the chancellor may require the filing with an answer of an itemized account.    Each case must depend upon its own particular facts,

but in this case we think that the decree of the chancellor was correct.

*The case is therefore affirmed, and remanded to be proceeded with in accordance with the decree of the chancellor, sixty days after the mandate is returned to the lower court.*