REED RESEARCH, Inc., Appellant,

v.

SCHUMER COMPANY, Inc. (Schock, Gusmer & Co., Inc.), Appellee.

No. 13179.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 15, 1956.

Decided Jan. 10, 1957.

As Modified Feb. 1, 1957.

Mr. Dayton M. Harrington, Washington, D. C., for appellant.

Mr. George Morris Fay, Washington, D. C., for appellee.

Before PRETTYMAN, BAZELON and BURGER, Circuit Judges.

BURGER, Circuit Judge.

The district court granted appellee's motion for summary judgment in the amount of $4600.87 as an account stated between the parties and this appeal is from the order for such judgment.

The record on which the district court acted discloses various business engagements between the parties including a customer relationship and a debtor-creditor relationship. One agreement was to supply appellant with certain services at a charge fixed by the parties at $200 per month to continue while a bank loan under a collateral agreement was outstanding. Appellee had supplied to the bank collateral security for appellant's loan.

As of July 31, 1953 the account for the charges under the agreement amounted to $4500.87 but by an error a statement was sent to Reed for $2100.87, whereupon Reed returned it for correction. On August 31, 1953 a statement marked "Corrected Statement" was sent to Reed for $4500.87. This statement bears on its face in longhand the following notation:

"8/31/53 Balance of $4500.87
agrees with Books of Reed Research.
Franklin J. Rixse
Officer Manager
Reed Research, Inc."

Subsequent to August 31, 1953, additional charges and credits were made to this account until January 30, 1954 with the result, not disputed, that the account rendered on May 31, 1954 was for $4600.87. The same statement, unchanged as to all but date, was sent June 30, July 31 and August 31, 1954 with no further debits or credits.

Appellee's action was brought for this balance of $4600.87. Appellant's answer, filed in 1955, asserted, *inter alia,* that the claim arose out of the loan agreement under which appellee had deposited collateral security with a bank to secure loans to appellant and that the charge of $200 per month was in fact for services which were not rendered. Alternatively, the answer pleaded that if the claim

was for interest for guaranteeing the loan the rate was usurious. It also asserted a counterclaim for $4899.13.

Appellant's answer must for present purposes be read with other documents filed by the parties, including numerous statements and letters which passed between the parties. Thus we find that in addition to the admission that the account of August 31, 1953 for $4500.87 "agrees" with the appellant's books, the subsequent and final statement for $4600.87 (May 31, 1954) with the notation, "Will you please give this matter your earliest attention?" went unchallenged for about two months. In addition to three unchallenged statements of account in May, June and July 1954, for the $4600.87 sued on, we find appellee on May 25, 1954 wrote to appellant reminding that "you have not made any effort to reduce the amount of your indebtedness which totals $4,600.87; although they have written you several times. * * * Frankly, Stanley, we are quite disappointed. * * *"

Not until July 22, 1954, two months after the first of the final statements of account were sent, and nearly one year after the appellant's office manager had written his notation that the then balance of $4500.87 "agrees with the Books of Reed Research," did appellant challenge his liability as stated by the accounts. This challenge was by a letter dated July 22, 1954 in which appellant, for the first time, raised a question, saying "as of today's date [Reed Research, Inc.] has no financial obligation. * * *" Significantly, this letter, in its next paragraph, continues:

"c. Notwithstanding anything to the contrary above, Reed Research recognizes a deep moral obligation to Schock, Gusmer and the Sperti group for the financial aid given at the time of the Agreement and for their continuing understanding and sympathy with the financial problems we have faced.

"d. Therefore, upon execution of a general release of prior obligations by all parties, Reed Research *offers to pay to Schock, Gusmer the sum of five-thousand dollars ($5,000) within one year of the date of this letter*, in recognition of the moral obligation recited in paragraph c., above, unless Schock, Gusmer elects to cancel such obligation by virtue of joint benefit stemming from paragraph a., above. [Emphasis added.]

"We enclose two copies of General Release executed by Stanley F. Reed and Reed Research, Inc. Will you kindly execute and return one copy for our files."

It was against this factual background that the district court had to determine whether any genuine issues of material facts were raised by the appellant's answer. It should be noted that appellant in its letter of July 22, 1954 deals only in terms of a conclusion that it "has no financial obligation" to appellees. Whether appellant had a financial obligation is a legal conclusion which must rest on facts and it is not without significance that nowhere in this letter, or later, did appellant challenge the figures or calculations.[1] The essence of an account stated is a finding whether on the admitted and known facts the parties at some point agreed that a particular amount was due and owing.[2]

Long ago the Supreme Court held that the lapse of time which converts an account rendered into an account stated, i. e., what is a reasonable time, is a question of law for the court. In that particular case a silence between three and four months was found unreasonable. Standard Oil Co. v. Van Etten, 1882, 107 U.S. 325, 1 S.Ct. 178, 27 L.Ed. 319.

1. See Lincoln v. Virginia Portland Cement Co., 1919, 49 App.D.C. 33, 37, 258 F. 505, 509.

2. Toland v. Sprague, 1838, 12 Pet. 300, 9 L.Ed. 1093; Riley v. Mattingly, 1914, 42 App.D.C. 290; Burnham v. Louis Meyers & Son, 2 Cir., 1949, 172 F.2d 84.

■■ Taking into account the long course of dealing, the complete absence of challenge to the account as stated in numerous statements, the admission of appellant's office manager that the account as stated "agrees with the Books of Reed Research," the failure specifically to challenge the final statement of May 1954 for $4600.87 for two months when it appeared that the creditor was insisting on payment, we think the district court was warranted in concluding, as it did, (1) that an account stated existed [3] and (2) that the issues raised by the answer were not *genuine* issues.[4] If any doubt existed the candid offer to settle this $4600.87 account for $5000 *on a one year deferred note* resolves that doubt. Paradoxically this offer is contained in the same letter in which, for the first time, appellant belatedly challenged his liability on the statement of this account between the parties.

It is correct, as Judge Prettyman points out, that appellant never agreed to the actual document of account prepared for trial, which showed a balance of $4600.87 as of January 30, 1954, but it did agree to $4500.87 categorically through its office manager and it failed to challenge, within a reasonable time under the *circumstances shown*, the final May 31 statement for $4600.87. The fact that the actual formal account attached to the complaint was "prepared solely for trial" goes to the form, not the substance of the issue. The formal account attached to the complaint was simply a detailed recapitulation of the May 31 statement; there were no transactions which altered the account between January 30, 1954 and May 31, 1954.

The order appealed from is

Affirmed.

PRETTYMAN, Circuit Judge (dissenting).

I disagree with my brethren on two grounds: (1) The issue of usury was fairly raised by defendant's Fourth Defense, and (2) the account sued on was not an account stated.

Schumer Company, Inc., entered into an agreement with Reed Research, Inc., in November of 1949, undertaking to lend, or to guarantee the loan of, $30,-000 to Reed. The agreement provided that during the period of the loan Reed would hire a designee of Schumer whose services would "encompass supervision of" Reed's accounting department "at a salary commensurate with the services rendered." This salary was later set at $200 a month. Pursuant to the agreement Schumer pledged securities with a Washington bank to guarantee a loan to Reed. Schumer frequently rendered statements showing the state of the account. When the bank's loan was paid, Reed refused to pay the amount Schumer claimed, denying that it owed the money; Reed contended that Schumer's designee had not in fact performed the services for which $200 a month had been charged.

On September 30, 1955, Schumer filed a civil action "On an Account", attaching to the complaint a statement showing a balance due August 31, 1952, and twenty-nine entries of charges and credits dated over the period to January 30, 1954. That statement was prepared solely for use in the lawsuit. Reed answered with four defenses and a counterclaim. The District Court gave summary judgment for Schumer, holding that there was an account stated and that the affirmative defenses were insufficient in law.

One of the defenses raised by Reed was that the agreement was in reality a loan contract calling for excessive interest.

3. Compare Pofe v. Continental Ins. Co., 7 Cir., 161 F.2d 912, certiorari denied 1947, 332 U.S. 824, 68 S.Ct. 164, 92 L. Ed. 399, with Warner Marsh & McLennan, D.C.S.D.N.Y.1939, 26 F.Supp. 814.

4. "The very object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of a trial." Cardozo, J. in Richard v. Credit Suisse, 1926, 242 N.Y. 346, 152 N.E. 110, 111, 45 A.L.R. 1041. See also 6 Moore's Federal Practice § 56.15[2] (2d ed. 1953).

Illegality of consideration is a good defense to an account stated,[1] and usurious interest is an illegal consideration.[2] A loan or sale of credit will be examined closely, and, if it appears from all the circumstances that the parties intended a usurious loan, the contract is unlawful. The question of the parties' intent is for the jury.[3] It seems to me that Reed's Fourth Defense raised genuine issues of material fact which precluded summary judgment.

Moreover it seems clear to me that the purported statement of account attached to the complaint was not an account stated. As I have pointed out, Schumer filed suit on September 30, 1955. The account annexed to the complaint began with a balance of $4,500.87 as of August 31, 1952, contained twenty-nine entries of charges and credits, and ended with a balance of $4,600.87 on January 30, 1954. This account was never seen by Reed before trial, was prepared solely for trial, and contained no entry or balance after January 30, 1954. The last statement rendered by Schumer before the impasse was on December 31, 1953, and was for a lesser amount. On January 13, 1954, after Reed had repaid the Washington bank, Schumer's vice-president suggested that representatives of the two firms should meet in order to "wind up final details concerning the loan contract." On April 16, 1954, Reed went to New York to meet with Schumer's attorney, but the latter was out of town. Before the parties met, Schumer render-

ed the account of May 31, 1954. On July 22, 1954, Reed wrote a letter to Schumer denying liability.[4]

The majority of the court treats the account of May 31, 1954, as an account stated. But Schumer did not sue on the account of May 31, 1954; it was not even referred to in the complaint. It is true that an account rendered may ripen into an account stated under certain circumstances, if the recipient voices no objection to it for a sufficiently long time.[5] But the period of silent acceptance in the case at bar is at most one month and three weeks, from May 31 to July 22, 1954. On the latter date Reed made a flat denial of liability. Furthermore the non-cooperation and deadlock[6] during the period after January 13, 1954, when the bank loan was repaid, lend no support to the proposition that Reed impliedly agreed it was liable and impliedly promised to pay the account of May 31, 1954.[7] The parties may have come close to an agreement upon a balance due in August, 1953, but that "corrected statement" was not the account sued upon and is not even shown in the account attached to the complaint.

If the statement sued upon was not an "account stated" Reed was entitled to dispute the entire liability or the amount of the balance, or both; and it did dispute the liability. If the account of May 31, 1954, can be held to be a part of the statement sued upon, and can be held further to constitute an account stated, nevertheless, as pointed out above, Reed

1. De Pasquale v. Williams-Bauer Corporation, 151 F.2d 578 (2d Cir.1945), certiorari denied 328 U.S. 836, 66 S.Ct. 1007, 90 L.Ed. 1612 (1946).

2. Peebles v. Yates, 88 Miss. 289, 40 So. 996 (1906); Jorgensen v. Kingsley, 60 Neb. 44, 82 N.W. 104 (1900).

3. Annotation, 104 A.L.R. 245, 251 (1936).

4. This letter apparently followed a meeting of the parties; the record is ambiguous on this point.

5. As in the case of Riley v. Mattingly,

42 App.D.C. 290 (D.C.Cir.1914), where Riley held an account received for eight months without objection. However we stated in that case that the facts must be clear in order to warrant such a holding.

6. For example, Schumer's remonstrative letter of May 25th, six days before the supposed account stated, which referred to Reed's failure to cooperate.

7. Chinn v. Lewin, 57 App.D.C. 16, 19, 16 F.2d 512, 515, 49 A.L.R. 1480 (D.C.Cir. 1926).

successfully raised the issue of the legality of the consideration.[8]

For these reasons I think the summary judgment should be reversed and the case remanded to the District Court for further proceedings.

---

8. The majority cites Standard Oil Co. v. Van Etten, 107 U.S. 325, 1 S.Ct. 178, 27 L.Ed. 319 (1882), for the proposition that silent acceptance of three and a half months, or twice the period involved here, can cause an account rendered to ripen into an account stated. In that case the Oil Company had agreed to purchase from Van Etten and his assignors a certain number of oil-barrel headings. The pieces of lumber were delivered to the Oil Company at a point in Michigan and then shipped to Cleveland, where an inspector of the Company counted and inspected them. Three and a half months before Van Etten sued the Company, he had been rendered an account by the Company, to which he never objected.

The trial court, after determining that as a matter of law the account was an account stated, sent to the jury the issue whether the Oil Company had been mistaken in its count of the lumber. It was upon the strength of its count of the lumber that the Oil Company had rendered the account. The jury found there had been a mistake in the count, and judgment was rendered for Van Etten despite the existence of the account stated. The Supreme Court affirmed. It follows from that case, therefore, that, even if the account in the case at bar was an account stated, Reed's claim of illegality, like a claim of mistake, should have been tried.