# CHARLESTON.

## Henry Dilcher, Jr., v. Charles Dilcher.

Submitted October 15, 1918.    Decided November 15, 1918.

1. Partnership—*Bill for Dissolution—Equitable Jurisdiction.*

In the case of a commingling of partnership and individual properties, rights and obligations, a bill in equity seeking a dissolution of the partnership and settlement of the partnership accounts and redemption of individual property from an incumbrance in the form of a lien for a partnership debt, presents a good cause of action, and relief may be given thereon, even though some of the plaintiff's claims turn out to be not well founded.    (p. 139).

2. Same—*Redemption of Individual Property from Liens.*

If, in such case, a statement of the partnership account is impossible for lack of evidence, the plaintiff may nevertheless have a decree of redemption of his individual property from the lien, on proof of his right to such relief.    (p. 139).

3. Same—*Unpaid Indebtedness—Pro Rata Liability.*

On such a bill, proof of firm indebtedness, inadequacy of assets and withdrawal by one partner of more than his share of the assets, making his indebtedness to the firm on a full settlement apparent in any event, if it could be made, justifies an adjudication of the liability of such partner for his *pro rata* share of the unpaid indebtedness, even though an accurate statement of the partnership account is impossible.    (p. 139).

4. Same—*Individual Property—Title.*

One partner holding the legal title to individual real estate of the other, under a conveyance thereof for the sole purpose of enabling him to borrow money thereon for partnership purposes, in his own name and upon his own note, cannot retain such title after the release of the lien by the creditor, by reason of a transfer thereof to property of his own or another person, even though the debt has not been paid.    (p. 141).

5. Same—*Individual Property—Indebtedness.*

But, although entitled to a reconveyance of his property, on such release, the partner to whom it belongs, remains liable to his copartner for his proportionate part of the debt, when paid, or he may be required in equity to pay such part thereof, by way of exoneration of his copartner from liability.    (p. 141).

6. SAME—*Title to Property—Release of Lien—Credit for Rents.*

   If the partner in whom the title was placed for such purpose
   has retained it, after the release of the lien and after termination
   of the firm business, and collected the rents, made repairs and
   paid the taxes, insurance and other charges against the property
   and paid interest on the debt out of the residue, and has a sur-
   plus, he may pay such surplus on the partnership debt for his
   copartner, by way of exoneration from his own liability thereon,
   and is entitled to credit on the rents collected for the interest
   paid on the debt. (p. 142).

7. SAME—*Partnership Indebtedness—Decree.*

   In such case, there can be no decree between the partners for
   payment or exoneration, until the partnership assets have been
   reduced to possession and applied on the indebtedness of the
   firm, but there may be a decree for reconveyance of the individ-
   ual property so conveyed and a dissolution of the copartnership.
   (p. 142).

Appeal from Circuit Court, Kanawha County.

Suit by Henry Dilcher, Jr., against Charles Dilcher. From
the decree, defendant appeals.

*Affirmed in part.   Reversed in part.   Remanded.*

*L. D. Vickers,* for appellant.

*J. B. Ellison,* for appellee.

POFFENBARGER, PRESIDENT:

This appeal is from a decree dissolving a partnership be-
tween the plaintiff and defendant and requiring the latter,
by way of settlement, to pay to the former a small sum of
money and convey to him an undivided one-half of three
lots in the City of Charleston.   The petition assigns numer-
ous errors and proceeds upon the theory of total lack of right
to any relief, in view of the evidence and certain findings
made by the commissioner to whom the cause was referred.

The subject matter of the partnership was a planing mill
and sash and door factory business established by Henry
Dilcher Sr., the father of the parties to this suit, about the
year 1888, and conducted in his name, as a partnership bus-
iness, for several years, and then, under the firm name of
Dilcher Brothers.   At the date just mentioned, a contract
was entered into between Henry Dilcher Sr. and Michael

Herscher, providing that the latter should be the foreman in the mill, on a weekly salary, with right to become a part owner of the business, in proportion to the amount of money he should subsequently invest in it; but it is not shown that he ever invested anything in it. He says he never received anything from the business except by way of salary. The two sons also worked in the mill as employees, agreeably to a provision of the contract mentioned. About the year 1895, they took over the business and ran it in their father's name until 1900 or 1901 and then changed the firm name to Dilcher Brothers. By a deed dated Dec. 18, 1895, their father conveyed to them, with other property, four lots in the City of Charleston, in consideration of natural love and affection and a covenant to pay him $1,000.00 a year, in equal quarterly installments, so long as he should live, performance of which was secured by a lien retained on the property. In order to obtain a loan of $5,000.00 on said lots, for use in the partnership business, Henry Dilcher Jr. conveyed his undivided half interest therein to Charles, and the latter borrowed the money, securing payment thereof on the lots by a deed of trust, and put it into the business. He seems to have been the business manager of the firm. As to one of the lots, the deed of trust seems to have been released in 1908, for Charles Dilcher conveyed it to Bessie Ryan, by a deed dated, August 15, 1908, in consideration of $1,350.00 which was paid on a debt made by Henry Dilcher Sr. The $5,000.00 debt reduced to $2,275.00 by payments was transferred from the lots on which it was originally secured to two lots owend by Annie Dilcher, wife of Charles, on a date not shown by the record, but stated in a brief to have been November 1909. Charles collected the rents accruing from the four lots, made the repairs on the buildings and paid the taxes, insurance and other charges against them. From January 1, 1906, the date on which the firm ceased to do business, the rents netted $2,159.13, of which one-half belonged in equity to Henry and the interest increased this half to $1,370.97, but Charles claims credit for interest paid out of the rents on the $2,275.00 debt.

In the opinion of the commissioner to whom the cause was

referred, no statement of the financial condition of the partnership is possible, for the reason that necessary bookkeeping was omitted or some of the books lost. For the most part, only paid checks, check stubs, pay-rolls and paid notes could be produced. An expert accountant employed by leave of the court was unable to state such an account. It was ascertained and reported, however, that the firm owes no debts except the balance due on the $5,000.00 loan and a $28.00 note augmented by interest to $34.75; and that it owns no property real or personal except two claims, one amounting to $500.00 for the collection of which a suit is pending and the other an uncollectible one for $120.00. The plaintiff asserts an equitable claim on behalf of the firm against two lots the title to which stands in the name of the defendant's wife, to which the $2,275.00 debt was transferred, charging purchase and improvement of the same with partnership funds. On the other hand, it appears that considerable sums paid out of partnership funds, represent individual indebtedness of the plaintiff, incurred in 1896 in his candidacy for a nomination for a public office and later in his conduct of a saloon or beer business in the City of Charleston. The commissioner made no finding as to the amounts of these payments, but the proof is that the former aggregated more than $3,000.00 and the latter more than $2,500.00. To the extent of about $3,000.00 Henry reimbursed the firm out of proceeds of sales of individual property.

In addition to the findings above noted, the commissioner held and reported that Charles had assumed the payment of the $2,275.00 debt and that the three lots remaining of those on which it was originally secured were no longer bound for it, and Henry's half interest therein should be reconveyed to him. He also recommended that Charles' claim of credit for interest paid on that debt since January 1, 1906, be disallowed. To his report, Charles filed seven exceptions, some of which pertain to conclusions of law and fact affecting only remotely the recommendations as to relief therein stated. Three of them, the fourth, sixth and seventh, bear directly upon those recommendations, and the court, in its modifications of the report, partially sustained them and overruled

the others. The decree disallows the claim of credit for interest paid on the $2,275.00 debt, amounting to $1,638.00, makes Henry liable for half of that debt, but sets off against that liability his share of the rents collected by Charles and interest thereon, amounting in the aggregate to $1,370.97, and so finds a balance of $233.47 due from Charles to Henry, which it requires the former to pay, as well as to convey to Henry the undivided half of the three lots above mentioned and referred to.

Impossibility of ascertainment of the partnership accounts and rights does not give right to a decree of dismissal. The bill seeks relief in respect of both individual and partnership property and the former is, or was at one time, encumbered by a partnership debt. Individual and social properties, rights and obligations have been commingled and intertwined to such an extent and in such manner that justice in the premises cannot be ascertained and administered on pleadings limited to social assets, obligations and rights, or one limited to individual rights. Both are involved and must be dealth with together. If the firm debt with which individual property was once encumbered has been paid or legally assumed by the defendant and is no longer a lien or incumbrance in any sense on that property, there is a clear right to a reconveyance, which a court of equity can enforce. If, on the other hand, the property is still bound for all or a part of that debt, equity can ascertain and adjudicate the rights of the parties respecting it. The bill may be treated as one to redeem from a mortgage or as a bill *quia timet.* To such a bill, the partnership balance might be set off against the plaintiff's *pro rata* liability for the debt. Inability to extinguish it and relieve his interest in the property would not defeat his bill for an adjudication of his right to redeem and the extent of his liability. *Turner* v. *Turner,* 3 Munf. 66; *Aust* v. *Rosenbaum,* 74 Miss. 893; *Watkins* v. *Watkins,* 57 N. H. 462; *Swegle* v. *Bell,* 20 Or. 323.

Nor does the existence of the debt, assuming it not to have been fully paid or satisfied in some other way, defeat such right. The proper procedure in such cases is to allow a limited time for redemption by payment of the debt, and de-

cree a foreclosure of the right of redemption and a sale of
the property to pay the debt, in case of failure to redeem
within the time allowed. *Turner* v. *Turner*, cited.

The assumption of inequitable conduct on the part of the
defendant toward the plaintiff and indebtedness of the for-
mer to the latter, upon which the commissioner's recommen-
dation and the court's decree are based, is not sustained by
the facts and circumstances disclosed. Henry did not fully
reimburse the firm for the money paid out by it for him, on
account of his political campaign expenses and his unfortu-
nate beer enterprise, by any means. Nor can the amount he
failed to repay be set off against the money withdrawn from
the firm by Charles in the purchase and improvement of the
two lots now owned by his wife, for Henry necessarily ob-
tained the individual property he sold in making partial re-
imbursement, in the same way and from the same source, the
firm. He does not pretend to have had any other source of
income. Until about 1900, both brothers devoted their time
and energies to the partnership business and lived out of the
social funds, each drawing from time to time what he or his
family needed. Their mill was destroyed by fire in that year
and the firm seems ever after to have labored under financial
embarrassment, and, besides, Henry's property seems to have
been acquired before that date. Until 1906, the rents from
their individual properties were turned into the partnership
business and used in it. These circumstances are sufficiently
probative of the origin of Henry's individual property to
call for rebuttal evidence, at least, but the record discloses
none. On the contrary, the testimony of Charles tends to
prove each acquired his individual real estate in the same way
and from the same source.

In as much as the three lots remaining out of those con-
veyed to the parties hereto by their father by his deed of Dec.
16, 1895, and standing in the name of Charles Dilcher, were
never partnership property and are not now, Henry Dilcher's
interest therein ought to be reconveyed to him, unless the
partnership debt originally secured thereon still binds it in
some way. The creditor has no lien on it by virtue of any
deed of trust. Its trust deed lien has been expressly re-

leased. That interest was conveyed for a special purpose, namely, to enable Charles Dilcher to borrow money on it, for partnership purposes, and only because the lender required the title to be put in the name of Charles. Subsequently, the creditor, a corporation, or its assignee, required another change of security, transfer of the debt from these lots to others owned by Charles Dilcher's wife. There is no pretense of any agreement that Henry's interest was conveyed to secure any partnership balance that might become due from him to Charles, or to indemnify the latter against liability on account of his execution of his individual note, for money to be used in the partnership business. Charles, himself, says these securities were given only because the lender of the money or owner of the debt required them. In view of this purpose of the conveyance, plainly and unequivocally admitted and stated, it cannot be said or held consistently with any principle of law or equity, that Charles now holds any lien on Henry's interest in these lots or has any right longer to retain the title thereto. The purpose of the trust upon which it was conveyed has been fully satisfied.

But no ground is perceived upon which Henry can be held to have been relieved of liability to Charles for his part of the unpaid partnership debt, or Charles' claim of credit for interest paid on it can be disallowed. Practically all of the assets of the partnership are gone and Charles swears they have been applied on firm indebtedness. Henry has apparently had the benefit in a legal sense, of the larger share of whatever there may have been at any time, in excess of firm liabilities. No account of the ordinary withdrawals for living and incidental expenses seems to have been kept. Both acquired individual property paid for out of firm assets. Beyond this, Charles seems not to have made any extraordinary withdrawals, but Henry did and has only partially compensated the firm for them. Manifestly, therefore, the latter is not injured by the inability of the former to show a true state of the partnership account, or, in other words, to prove how much Henry is indebted to the firm. To relieve Henry of liability for the unpaid indebtedness, under these circumstances, would be clearly unjust and inequitable. He

is bound to pay his part of this indebtedness and allow credit for interest paid thereon, but there is no lien on his property for it.

Allowance of credit for the interest paid by Charles on the $2,275.00 debt out of the rents collected by him leaves only $529.13, one-half of which, $264.56, equitably belongs to Henry and should be decreed to him, unless Charles has right to withhold it and apply it on the partnership debt. In a qualified sense, he has assumed that debt and Henry is equitably bound to allow him to apply his share of the rents to the payment thereof. The creditor holds his individual note for this firm debt, and, though he has not paid it, he is legally bound to do so. He may rightfully pay it and charge Henry, or he might also, in equity, compel Henry to pay his part of it, by way of exoneration. Hence, his equitable right to retain this money and pay it on the debt is clear.

But there can be no decree for payment of any balance as between the parties, in the present state of the case, because there is a firm asset which has not been reduced to money, and another small firm debt. *Bartlett et als.* v. *Boyles,* 66 W. Va., 327, 333. In the court below the final decree as between the partners for payments or exoneration, may be withheld until the uncertainties as to the amount due on account of the unpaid indebtedness, reduced by such assets as are available, shall have been eliminated. The charge of interest made against the defendant on account of rents collected is based upon the erroneous theory of denial of credit for interest paid by him on the partnership debt. A recalculation based upon receipts and proper allowances for disbursements, including collections and disbursements since January 1, 1915, will determine the amount he must pay to Henry's credit on the partnership debt, as for money derived from the rents.

In so far as the decree complained of requires the defendant to reconvey to the plaintiff his undivided one-half interest in the three lots aforesaid, appoints a commissioner to make conveyance thereof, in case of default, dissolves the partnership and adjudges that each of the parties pay one-half of the costs in the court below, it will be affirmed and in

all other respects reversed; and the cause will be remanded for further proceedings. Costs in this court will be decreed to the appellant.

*Affirmed in part. Reversed in part. Remanded.*