OSCAR L. RICHARD et al., Respondents, *v.* CREDIT SUISSE, Appellant.

Banks and banking — foreign credit — contract — rescission — pleading — summary judgment — object of motion for summary judgment — unreal issue raised by denial of allegations of default — action to recover moneys paid for establishment of foreign credits — non-performance being proved, plaintiffs not limited to damages but may demand restitution — notice of rescission for abandonment — no inference of indefinite extension of time for performance may be drawn from absence of notice to contrary.

1. The very object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of a trial.

2. In an action, therefore, to recover back moneys paid defendant for the establishment of foreign credits in favor of plaintiffs, an issue, raised by formal denial of allegations of default, is unreal, where defendant's own letters are instinct with the admission that its correspondent was at fault and the affidavit of its attorney states in effect that the denials are merely formal and are to be interpreted and justified as conclusions drawn by the pleader from the affirmative defenses.

3. The plaintiffs, bankers in New York, contracted by cable with the defendant, a Swiss bank, for the purchase of Polish marks to be paid by the defendant to the plaintiffs or the plaintiffs' nominee at a bank at Warsaw, Poland, which country was then at war. Aggrieved by unreasonable delay in the execution of the orders, they gave notice of election to treat the contracts as rescinded, and have sued for the recovery of the money paid. The defendant has answered their complaint with denials and defenses. *Held*, upon examination of the facts that there is nothing of substance to be tried.

4. Non-performance being proved, plaintiffs are not limited to damages but may properly demand restitution and this right continues unimpaired notwithstanding that the defendant had not repudiated its contracts nor refrained altogether from some effort to perform them.

5. Upon rescission for abandonment notice may be given at any time within the period of the Statute of Limitations unless delay would be inequitable. Inaction without more is not tantamount to choice.

6. A buyer's failure to conform to a custom imposing upon him a duty to inquire whether a credit has been established is not a bar to restitution where the seller has made inquiry for himself and ascertained the truth or would have ascertained the truth if his own duty had been fulfilled.

7. Nor can an argument be upheld that the defendant, though aware that it was already in default, might reasonably infer from the absence of notice to the contrary that the time for the performance of the contract had been indefinitely extended. From silence without more, the defendant might have legitimately inferred that the plaintiffs were either unaware of the default, in which event an inference of waiver was excluded, or aware of the default, in which event the inference was that they were standing upon their rights.

*Richard* v. *Credit Suisse,* 214 App. Div. 705, affirmed.

(Argued February 23, 1926; decided May 4, 1926.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first

judicial department, entered May 1, 1925, unanimously affirming a judgment in favor of plaintiffs entered upon an order of Special Term granting a motion by plaintiffs for summary judgment under Civil Practice Rule 113.

*Joseph M. Hartfield, James Adam Murphy* and *Henry Escher* for appellant. Competent proof of the alleged breach was not made by plaintiffs. (*General Investment Co.* v. *Interborough R. T. Co.*, 235 N. Y. 133; *Curry* v. *Mackenzie*, 239 N. Y. 267; *Moe* v. *Bank of United States*, 211 App. Div. 519; *Baldwin's Bank* v. *Smith*, 215 N. Y. 76; *Coates* v. *First Nat. Bank of Emporia*, 91 N. Y. 20; *Mazukiewicz* v. *Hanover Nat. Bank*, 240 N. Y. 317; *Goldmuntz* v. *Spitzel*, 91 Misc. Rep. 148.) Competent proof of the alleged breach is not presented in the moving papers, which show the contract was performed by defendant. (*Coates* v. *First Nat. Bank*, 91 N. Y. 20; *Baldwin's Bank* v. *Smith*, 215 N. Y. 76; *Risley* v. *Phœnix Bank*, 83 N. Y. 318; *Fourth Street Nat. Bank* v. *Yardley*, 165 U. S. 634.) The action fails because plaintiffs are not entitled to rescind. (*Schulder* v. *Ladew Co., Inc.*, 165 N. Y. Supp. 504; *Coff-Garrod Co.* v. *Dodwell & Co.*, 170 N. Y. Supp. 615; *Mason* v. *Valentine Souvenir*, 168 N. Y. Supp. 159; 180 App. Div. 823; *Cohen* v. *Curtin Co., Inc.*, 177 N. Y. Supp. 246; 107 Misc. Rep. 622; *Taylor* v. *Goelet*, 208 N. Y. 253; *Gravenhorst* v. *Zimmerman*, 236 N. Y. 22; *Richards* v. *American Union Bank*, 241 N. Y. 163; *Trainor Co.* v. *Amsinck & Co., Inc.*, 236 N. Y. 392.)

*Walter H. Pollak* and *J. Charles Weschler* for respondents. No genuine and substantial issue as to defendant's failure to perform the contract of May 14, 1920, is raised. Plaintiffs' proof of non-performance is conclusive and uncontroverted. (*Gravenhorst* v. *Zimmerman*, 236 N. Y. 22; *Equitable Trust Co.* v. *Keene*, 232 N. Y. 290; *Legniti* v. *Mechanics & Metals Nat. Bank*, 230 N. Y. 415; *Trainor Co.* v. *Amsinck & Co., Inc.*, 236 N. Y. 392.) Defendant

cannot vary its contracts by an alleged usage of international banking or rule of the law merchant; nor can it sustain a claim of performance. (*Gravenhorst* v. *Zimmerman*, 236 N. Y. 22; *Corn Exchange Bank* v. *Nassau Bank*, 91 N. Y. 274; *O'Donahue* v. *Leggett*, 134 N. Y. 40.)

CARDOZO, J.   The plaintiffs, bankers in New York, contracted by cable with the defendant, a Swiss bank, for the purchase of Polish marks to be paid by the defendant to the plaintiffs or the plaintiffs' nominee at a bank at Warsaw, Poland.   Aggrieved by unreasonable delay in the execution of the orders, they have given notice of election to treat the contracts as rescinded, and have sued for the recovery of the money paid with interest. The defendant has answered their complaint with denials and defenses.   The question is whether there is anything of substance to be tried (*Curry* v. *Mackenzie*, 239 N. Y. 267, 270).

The first of three contracts was made on or about May 14, 1920.   Its subject-matter was ten million Polish marks to be paid at Warsaw to one Stanislas Lesser, plaintiffs' nominee.   The defendant gave an order by telegram to its Warsaw correspondent for the creation of the credit, but the order was disregarded.   The plaintiffs rescinded in March, 1921, when they learned for the first time that payment had not been made.

The second contract, made on June 1, 1920, was for two million Polish marks to be paid to the plaintiffs at the Commerz Bank at Warsaw.   There was failure of performance as late as May, 1921, when restitution was demanded.

The third contract, made on June 29, 1920, was for the same amount of marks as the second, the credit to be established in favor of the plaintiffs, once more at Warsaw, Poland.   There was failure of performance as late as the following July.

Defendant insists, that the plaintiffs' allegations of

default are placed in issue, at least formally, by the denials of the answer, and that the supporting affidavits upon the motion for summary judgment do not establish the breach with technical precision. We are unanimous in holding that this issue is unreal. There is no need to determine whether the books of the Warsaw bank and the admissions of its officers would serve without more to charge the defendant with liability. Even if these were to be disregarded, enough would be left. We have the defendant's own letters which are instinct with the admission that its correspondent was at fault. More than this, we have the affidavit of its attorney which states in effect that the denials are merely formal and are to be interpreted and justified as conclusions drawn by the pleader from the affirmative defenses. The very object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of a trial. The defendant is not aggrieved if we take it at its word.

Non-performance being proved, there remains the question of the remedy. The plaintiffs ask for restitution. The defendant would limit them to damages. Rescission, it is said, is inequitable because of silence and inaction. Banking at Warsaw was impeded by a state of war between Soviet Russia and Poland. The defendant did not repudiate its contracts, nor refrain altogether from some effort to perform them. Its plight is due in part to the default of some one else, its chosen correspondent. Out of this predicament, there have emerged in the defendant's view new equities and duties that might not call for recognition if the default had been intentional. In such a situation, the plaintiffs, it is said, should have investigated for themselves the state of Lesser's credits and their own within the territory of war, and given warning to the defendant whether they rescinded or affirmed.

We think the right to restitution continues unimpaired.

There is a distinction between rescission for fraud, which goes upon the theory that a contract is to be treated as non-existent for lack of true assent, and rescission for abandonment, which goes upon the theory that a contract is avoided for non-performance though valid in its origin. In the one situation, notice of rescission must follow promptly upon discovery of the fraud. This at least will be assumed, though there may be exceptions even here (cf. *Ripley* v. *Hazelton*, 3 Daly, 329; *Wolf* v. *Nat. City Bank*, 170 App. Div. 565, 570). "What promptness of action a court may reasonably exact * * * must depend in large measure upon the effect of lapse of time without disaffirmance upon those whose rights are sought to be divested" (U. S. Supreme Court, per STONE, J., in *Barnette* v. *Wells-Fargo Nat. Bank*, 270 U. S. ——). In the other situation, which in the view of learned authors is not properly to be characterized as an instance of rescission at all (Woodward, Quasi-Contracts, § 260; Anson, Contracts [Corbin's ed.], § 402, p. 465, note), notice may be given at any time within the period of the Statute of Limitations unless delay would be inequitable (Williston, Contracts, § 1469; Woodward, Quasi-Contracts, §§ 260–267; *Richter* v. *Union Land Co.*, 129 Cal. 367, 374). Such inequity will result, for instance, if there is property to be returned, or if reliance upon apparent acquiescence will result in hardship or oppression. "Indeed it is probable that some element either of ratification or of estoppel is at the root of most cases, if not all, in which an election of remedies, once made, is viewed as a finality" (*Schenck* v. *State Line Telephone Co.*, 238 N. Y. 308, 312). Inaction without more is not tantamount to choice. If the defendant had promised to make delivery of cotton at a designated warehouse within a reasonable time, the plaintiffs would have been under no duty to rescind when first they discovered that delivery had been unreasonably

delayed. They might postpone the election until their patience was exhausted by aggravation of the wrong (*Trainor Co.* v. *Amsinck & Co., Inc.*, 236 N. Y. 392; *Murray Co.* v. *Lidgerwood Mfg. Co.*, 241 N. Y. 455). In the absence of special circumstances, the rights of the parties are not different where the subject of the contract is a sale of foreign money, or, what is substantially equivalent, the creation of a foreign credit. Rescission is not barred because indulgence has been shown (*Rose* v. *Foord*, 96 Cal. 152, 155; *Richter* v. *Union Land Co.*, *supra*).

Election presupposes knowledge, or at least the omission to fulfill some duty of inquiry from which knowledge would have followed. There is no claim by the defendant that the plaintiffs failed to rescind promptly after knowledge of the breach. The claim is merely that diligent inquiry would have brought knowledge to them sooner. The duty to make inquiry has a foundation, it is said, in custom. The answer pleads a custom whereby the purchaser of the foreign credit inquires within a reasonable time whether the credit has been established in accordance with the contract. Inquiry is addressed not only to the bank that is to open the account, but also to the beneficiary for whose benefit it should be opened. A supporting affidavit informs us that by the exactions of the custom a duty of inquiry rests upon the seller of the credit as well as upon the buyer, though the receipt of a debit note from the correspondent bank may dispense with further inquiry where there is no reason to suspect that performance has been withheld. The custom is assailed as unreasonable and in other respects invalid. We leave that question open. For the purpose of this appeal, we assume in favor of the defendant that in possible situations the failure of the buyer to make the prescribed inquiry will be a bar to restitution. We cannot doubt, however, that it fails of that effect where the seller has made inquiry for himself and ascertained the truth, or would have ascertained the truth if his own

duty had been fulfilled.   In the light of these principles, the three causes of action will be successively considered.

(1) The first cause of action is based upon the plaintiff's order of May 14, 1920, for ten million Polish marks to be paid to Mr. Lesser at Warsaw, Poland.   In execution of that order, the defendant telegraphed its Warsaw correspondent, the Commerz Bank, on May 17, and on May 21 wrote a confirmatory letter.   The letter reached its destination, but the telegram miscarried, and so the defendant was advised.   Apparently this advice was delayed until July 16, for the defendant states that on that day, and at once upon being informed of the miscarriage of the first telegram, it telegraphed the Commerz Bank again to set up the credit, valued as of May 19. To this on July 20 it received an answer to the effect that since Lesser had no account with the bank, the order could not be executed beyond the value at the date of payment.   There was a request at the same time for instructions as to the disposition of the interest.   A few days afterwards (August 1) a moratorium was declared, and the credit was no longer available except for ten per cent monthly of the previous balance.   On July 20, if not before, the defendant knew that the credit had not been established within a reasonable time after May 14.   Then, if not before, it knew itself in default.   With that knowledge, it gave no notice to the plaintiffs to inform them of its belated action.   What was done even at that late day was ineffective and imperfect, but such as it was, the plaintiffs were not told of it.   The defense is built upon the theory that the plaintiffs were subject to a continuing duty to inform themselves of what was going on, and that the defendant, admittedly in default, might rest on the assumption that this duty had been fulfilled.   We think the theory will not hold.

If the plaintiffs ought to have inquired about the execution of their order within a reasonable time after May 14, 1920, the defendant, on its own statement of

23

the custom, was charged with an equal duty. Perhaps it might fairly have been satisfied with a debit note from its correspondent, but the record makes it clear that this it did not get. When its correspondent gave notice that the telegram had miscarried, the defendant evidently understood that another telegram was necessary, but this it did not send till July 16. Assume, however, that the plaintiffs were delinquent in not informing the defendant of acts or omissions which the latter was under a duty to learn for itself. The fact still remains that on July 20, if not before, the defendant knew that the credit had not been set up as originally ordered, and that a reasonable time had long ago expired. It could not at this belated time attempt performance of its contract, and still rely upon a continued duty of inquiry on the part of the customers, as to whom it was already in default. If it wished the benefit of such inquiry thereafter, it should have told them what it was doing. The supposed custom did not mean that the plaintiffs must investigate continuously, within a reasonable time at first and again repeatedly thereafter. In particular it did not call upon them to inquire between July 16 and August 1, though if they had inquired even then they would have learned that part of the credit bargained for had been withheld to the defendant's knowledge. On August 1 came the moratorium, with prompt notice to the defendant that payment had been suspended. Nothing that could have been done by the plaintiffs thereafter would have made it any wiser. Neither for principal nor for interest was any credit tendered or established by the defendant's correspondent till April, 1921, or later. At that time restitution had already been demanded.

The argument is made that the defendant, though aware in July, 1920, that it was already in default, might reasonably infer from the absence of notice to the contrary that the time for the performance of the contract had been indefinitely extended. We find no basis for

such an inference. The plaintiffs' order for the marks begins with the word " urgent," which in itself was notice to the defendant that prompt action was important. The conditions of the market, the rapid and violent fluctuations of exchange, gave notice to the same effect. Assent to an indefinite extension would have been precarious and extraordinary. There are cases in which such assent has been gathered from the acceptance, express or tacit, of acts of part performance from a party in default (*Gen. Supply & Construction Co.* v. *Goelet,* 241 N. Y. 28). There are none where assent has been inferred as the result of acts of part performance unknown to the party wronged. From silence without more, the defendant might legitimately infer that the plaintiffs were either unaware of the default, in which event an inference of waiver was excluded, or aware of the default, in which event the inference was that they were standing upon their rights. As the sequel has developed, the inference of ignorance was the true one. The default was yet unknown. If, however, the defendant preferred to draw the inference of knowledge, there was nothing in the situation to inform it what the choice of rights would be. The alternative remedial rights appropriate to a breach were still in equilibrium. There was, indeed, an obvious expedient by which the defendant could have forced the plaintiffs to an election, if an election had been deemed important. It could have tendered payment of the marks, in which event choice would have been necessary between acceptance and rejection. Nothing of the kind was done. The mere transmission of the instructions to the Polish correspondent was not performance of the contract. Performance was not effected until payment had been made. The instructions were transmitted without notice to the plaintiffs, and transmitted at a time when the period of default was still measured by weeks. The defendant would have us hold that by this act without more it so altered its position as

to impose upon the plaintiffs a duty of acceptance when payment was tendered at the end of a year.  Condonation does not follow so easily at the will of the wrongdoer. Much is made of the argument that if rescission is permitted, the defendant will be a loser because of the depreciation of the mark.  This is no concern of the plaintiffs unless they have induced the loss.  It does not follow, however, that the loss would be any less if restitution were denied.  Even in that view, there might still be reparation to the plaintiffs for any damages resulting from the postponement of performance.  *Richard* v. *American Union Bank* (241 N. Y. 163) did not hold that upon sales of foreign money there cannot in any circumstances be a recovery of damages occasioned by delay. The case went upon the narrow ground that the pleader by the form of his complaint had excluded the conclusion that damage had been suffered.  At all events, if depreciation of the mark involves a loss to be taken account of in determining whether rescission is inequitable because prejudicial to the seller, it is not to be disregarded as unreal in determining whether the denial of rescission is inequitable to the buyer.  The defendant's plight is not due to the rejection by the plaintiffs of the tardy tender of performance.  It is due to a default which the defendant should have known, and, knowing, have avoided.

In this situation, the remedies available to the buyer are not affected by the supposed custom of diligent inquiry. The remedies are what they would be if the custom were expunged.  So viewed, they include the privilege to elect between restitution on the one hand and damages on the other.  The plaintiffs' situation may be no better. than it would have been if they had learned at once of the default, but also it can be no worse.  Postponement of election has no greater element of hardship where the subject of the sale is Polish marks than it has where the subject is any other article of commerce.  In the one case as in the other, the buyer may believe that perform-

ance, even though it has been unduly postponed, will follow without much delay, and may be reluctant, while that belief persists, to crowd the seller harshly by announcing a rescission. The party in default rather than the one that is innocent, should bear the burden of any loss that is incidental to indulgence. There may be justice in a holding that will throw the loss upon the buyer where the seller has good reason to believe that his performance has been in order, if usage lays upon the buyer the duty of inquiry. There is none where a seller, knowing himself in default, makes a feint of performance after a reasonable time has gone by, and then washes his hands of the transaction without even an acknowledgment by his correspondent that the order has been filled, and indeed with notice through the moratorium that to fill it is impossible. Such aloofness and indifference do not comply with banking usages as the defendant has itself described them. Rescission is not inequitable against a seller so delinquent.

(2) The second cause of action is based upon the order of June 1, 1920, for two million Polish marks. The defendant admits that it waited till July 30, substantially two months, before ordering the Commerz Bank to credit to the plaintiffs the marks called for by this order. There would have been no good in the plaintiffs' making an inquiry before that time. The defendant knew from its own records that the credit had not been made. Rescission was not barred by its belated effort to perform, made without notice to the plaintiffs after it was already in default. If, however, the time for inquiry were to be computed from July 30, the result would not be changed. In that view the plaintiffs had a reasonable time thereafter to investigate and report. Long before the time was by, the defendant knew from the admissions of its own correspondent that the credit was ineffective. On August 3, 1920, the Commerz Bank had telegraphed the defendant that by reason of a moratorium, drawings

were limited to ten per cent monthly of the previous credit balance. The defendant had full knowledge within a few days after telegraphing the transfer that its order would not be executed, and that the plaintiffs could not get the money. It telegraphed a protest to the Polish bank, and there it let the matter rest. It did not notify the plaintiffs, whose money it had received and held, that the credit was abortive. It did not take any steps to establish a larger credit. It was silent and inactive. Not till July, 1921, did it receive from its correspondent the debit note that should have been transmitted to it more than a year before. Its order was executed then for the first time, if ever executed at all. Now it comes forward with the plea that the plaintiffs, who knew nothing of these happenings, might by diligence have learned of them, and with such knowledge might have reported to the defendant what the defendant knew already. We see nothing inequitable in a holding that the plaintiffs were at liberty to rescind against a defendant so circumstanced when knowledge was thereafter gained. The inequity would be wrought if rescission were denied.

(3) The third cause of action is based upon the order of June 29, 1920. By telegram of June 29, 1920, confirmed by letter of July 2, the defendant notified the Commerz Bank to credit the plaintiffs with the marks called for by this order. No acknowledgment of this order was ever received or given. The defendant's witness as to custom informs us that in default of some acknowledgment the duty to inquire is on the seller as much as on the buyer. Inquiry, if made, would have disclosed the fact that no credit was ever entered. The defendant ignored its duty in that regard, though it had taken the plaintiffs' money for the service to be rendered. The consideration has failed, and it should pay the money back.

The judgment should be affirmed with costs.

LEHMAN, J. (dissenting). The defendant's obligations under its contracts must be measured by the terms of the contracts themselves. I agree that the affidavits presented upon this motion conclusively show that the defendant did not make full or timely performance of these obligations. Question still remains whether the affidavits show conclusively that because of the defendant's breach the plaintiffs may avail themselves of this default, rescind the contract and recover the consideration paid. The contracts were made in May and June, 1920; performance was required within a reasonable time thereafter. The plaintiffs had the right to rescind for defendant's failure to perform within a reasonable time, though notice to perform within a stated time was not previously given. (*Trainor Co.* v. *Amsinck & Co.*, 236 N. Y. 392.) The plaintiffs did not avail themselves of this right till March, 1921, many months after reasonable time for performance was over. They say that until about that time they did not know that defendant was in default. That may be true, but they must have known that the time for performance by defendant was long past and yet apparently they neither inquired whether performance was made, nor sought to avail themselves of assumed performance by defendant by using the credits which should have been established. If rescission must be made within a reasonable time, it seems clear that there is at least a question of fact whether it was so made in this case.

My conclusion that in the present case the affidavits still leave open a question of fact as to whether the attempted rescission by the plaintiff is effectual is not based upon any difference of opinion as to the general rules of law which must govern attempted election to rescind. I concur in the statement of the general rules of law in the prevailing opinion. I do not agree with the application made of these rules to the particular facts in this case.

Although the plaintiffs have received no benefit from

performance by the defendant, yet the defendant has not repudiated the contract nor wholly failed to perform. On the contrary, the defendant has notified the Warsaw bank, though perhaps tardily, to transfer credits or pay over ' money in accordance with defendant's agreement. Both parties understood that performance of the contract after such notification must be made by the Warsaw bank. The defendant was responsible for non-performance by the Warsaw bank, but the relation between the defendant and that bank was not simply that of principal and agent. The defendant was a creditor of that bank and the contracts contemplated transfer or payment of its credit or part thereof to the plaintiffs. When defendant notified the Warsaw bank to make such transfers and payment, it parted with its control of the moneys it had in the bank. It assumed that the Warsaw bank would carry out instructions. The plaintiffs made no inquiry. So far as the record shows, they too assumed that the credits or moneys had been paid or transferred. They learned thereafter that the Warsaw bank had not followed defendant's instructions. It does not appear that until that time non-performance by the defendant had caused any change in the plaintiff's position. They seem to have proceeded in all respects upon the assumption that the transfers were made. Non-performance by the defendant did not, so far as it appears, prevent the plaintiffs from using the foreign moneys for their intended purpose. The effect upon them of non-performance was that at the time of discovery they had 4,000,000 marks less in their bank account than they expected. Transfer of 4,000,000 marks at that time would have put them in the same position they would have been in if the transfer had been made at the stipulated time. If they are permitted to rescind the contract now they profit by the defendant's breach, for they could purchase performance now at one-quarter of the amount paid originally.

On the other hand, by such rescission the defendant

would find itself again in control of the moneys or credit which it had attempted to transfer and which it is still willing to transfer. It may not do so but by this judgment is compelled to pay back the amount it has received, though that amount is four times as much as the foreign money or credit is now worth. Of that it may not complain if the plaintiffs' gain and the defendant's loss are due solely to defendant's fault. Instances are not infrequent where in a falling market a buyer is permitted to refuse goods because they have not been tendered in compliance with the contract, though the buyer gains by the seller's breach. The buyer has the right to insist upon performance, or in the alternative restitution of the consideration paid for the promise to perform. If, however, he waives the default, if by his own actions the buyer causes the seller to change his position in justified reliance upon indicated intention on the part of the buyer to accept belated performance, then the buyer may not thereafter change his attitude to the consequent damage of the seller. Failure to make prompt election to rescind may in some cases create an estoppel.

Whether or not the plaintiffs' failure to rescind the contracts promptly after reasonable time for performance had passed bars right to rescind thereafter depends upon two questions: *First,* were the plaintiffs under any duty to the defendant to give notice to it that they would not accept belated performance? *Second,* did the defendant change its position because of failure to receive such notice? As I have already stated, we are not dealing now with a case where the defendant had done nothing in performance of its promise; where in effect the defendant had disregarded its contracts. Here, though belatedly, it had notified the Warsaw bank of its assignment of part of its deposits to the plaintiffs, and it had directed the Warsaw bank to make the transfer effective. Failure on the part of the plaintiffs to notify the defendant after reasonable time for performance had passed

that it would not accept belated performance, caused the defendant to relinquish control of its bank credit until after the credit had lost most of its value; and at the same time it placed the plaintiffs in the position where they could have demanded of the Warsaw bank that the transfer of credit should be completed. Concededly the value of these credits was fluctuating rapidly. If the plaintiffs' failure to notify the defendant of election to rescind and not to accept belated performance had been due to an intention to speculate at defendant's risk and with knowledge that performance by the defendant at that time was not complete, though directions for performance had been given or were about to be given, it would seem clear that the plaintiffs would have been guilty of bad faith and by their own actions would have misled the defendant. I ascribe no such intention, or even knowledge of non-performance, to the plaintiffs. On the contrary, the evidence seems undisputed that the plaintiffs did not have knowledge of defendant's non-performance at that time and made no inquiries about it. I point out merely that if plaintiffs' failure to demand restitution when time for performance had passed had been deliberate and due to intention to postpone election of whether to stand upon the contract or to disregard it until they could decide which would be the more profitable course, then they would have lost the right to a remedy which is based upon equitable considerations. If election to disregard the contract need not in all cases be made promptly after breach, at least it may not be postponed beyond the time when there was duty to speak and silence has naturally and reasonably led the other party to a change of position which causes additional loss. The contract may not be kept alive and thereafter disregarded for breach that was waived.

It is here that we find the question of fact which in my opinion can be decided only after a trial. Concededly the plaintiffs have given no notice that they regarded

the contract as breached or demanded return of the consideration paid, until long after time for performance had passed. Prompt notice would have put the defendant in control of foreign moneys or credit which it could presumably have disposed of at the then prevailing rate of exchange or value. Delay has to that extent caused loss to defendant and placed the plaintiffs in a position where they can obtain a similar contract for correspondingly smaller consideration. If there was duty upon the plaintiffs to give notice promptly that they would not accept belated performance thereafter, and if the defendant had the right without inquiry to remain quiescent thereafter, then the plaintiffs may not profit by their wrong. Whether such duty rested on the plaintiffs and whether the defendant could rely upon the plaintiffs performing that duty, depends on all the circumstances of the case, and especially upon the usual course and practice of this kind of business. Ordinarily when a contract is made for foreign exchange the so-called buyer intends to use it for a particular purpose, the so-called seller anticipates that the transfer will be made by the foreign bank in accordance with directions given to it. If the foreign money or credit is not available when the buyer attempts to use it, ordinarily the seller will expect to be called to account for non-performance. It is said that by custom the duty is placed upon the buyer to inquire whether the transfer is made. Perhaps similar duty is laid upon the seller; yet if such custom exists we cannot say that the defendant could not reasonably under all the circumstances of the case and the conditions existing in Warsaw at the time, rely upon the plaintiffs notifying it that because of its non-performance they would regard the contract as terminated. We cannot say that the plaintiffs in failing to inquire did not assume the risk that performance had not been made fully, if at all, or that the defendant was not under the circumstances justified in proceeding upon the assumption either that perform-

ance had been completed and accepted or if not completed, that belated performance would be accepted.

It is said that even a custom which placed upon the plaintiffs duty of inquiry whether transfer was made at the bank cannot avail the defendant since the defendant was likewise under duty of inquiry and indeed knew that it had not itself promptly complied with the contract and had no reason to assume that the plaintiffs would accept belated performance. It does not seem to me that this conclusion follows as matter of law from undisputed facts. The determining factor in regard to the plaintiffs' right to rescind, more than six months after the time has expired for performance by the defendant, in strict accord with its contractual obligation, is not whether the plaintiffs' firm or the defendant has been guilty of negligence for which either should be penalized but whether the plaintiffs' conduct in failing to notify the defendant of *intention to rescind* was calculated to and did mislead the defendant to its injury. It is true that the defendant not only should have known but in fact must have known that at the time when the contracts or at least some of them should have been performed, it had failed to take steps to carry them out. Notice by the plaintiffs of failure to perform when the defendant knew that it had not performed would serve no purpose. Notice by the plaintiffs that because of failure to perform by the defendant they would not accept performance thereafter may well have resulted in defendant giving the bank subsequent directions to make the transfer and in parting with control of its moneys in the bank. If the defendant had the right to assume from plaintiffs' failure to give notice of rescission that the plaintiffs would accept performance thereafter, even if incomplete at the time and it acted upon that assumption to its loss, then I think that the plaintiffs may not thereafter insist upon the breach as a ground of rescission. By their silence they may have extended the time for performance

1926.] Dissenting opinion, per LEHMAN, J. [242 N. Y. 346]

if they remained silent when under a duty to speak. Whether in spite of extension of time to perform they might still recover damages for failure to perform at the stipulated time is not a question which we may decide in this action. Such right to recover damages may depend upon whether the plaintiffs waived proven default not merely as ground for rescission but as ground for damages; whether in other words they merely waived default or whether they extended the stipulated time. I point out merely that in the case of *Richard* v. *American Union Bank* (241 N. Y. 163) the circumstances were not analogous. There the plaintiffs who are also the plaintiffs here, apparently failed as in this case to notify the seller of foreign credit that transfer had not been made until long after time for performance of the contract had passed and the foreign money had declined to a fraction of its value at the time the contract was made, but so far as shown, the defendant had not been misled or injured by this failure. It did not change its position in any way, to its detriment. It attempted performance only when it could do so at a large profit.

Here the defendant was apparently misled to its detriment by the plaintiffs' silence; it did part with control of its moneys in the Warsaw bank. It did make some attempt at performance before decline in value of the money. If the plaintiffs by failure to act gave the defendant the right to assume that subsequent performance would be accepted as compliance with contract obligation, then the plaintiffs may not now rescind. That is the ultimate question presented here and the affidavits presented upon the motion are insufficient in my opinion to justify its answer without a trial.

The court cannot take judicial notice of customs of the business in foreign exchange. It cannot weigh the effect of action or non-action of the parties nor determine the relative duties of the parties without proof of such customs and of all the conditions surrounding the trans-

action. The obligations of the defendant under its contracts are in general clearly and unambiguously expressed; the question of whether breach of those obligations was waived, and whether the right to restitution because of that breach was lost, depends on equitable considerations outside of the contract. There may in fact be difference in regard to the separate contracts, but these are matters which must await trial. Regardless of whether the burden rests upon the plaintiffs to show that rescission was prompt or upon the defendant to show that there was unjustified delay which placed an undue burden and loss upon it, the affidavits before us show that defendant is under the rule entitled to defend.

The orders should be reversed, with costs, and the motion denied.

Hiscock, Ch. J., Pound and Crane, JJ., concur with Cardozo, J.; Lehman, J., writes dissenting opinion, in which Andrews, J., concurs; McLaughlin, J., absent.

Judgment affirmed.