ISAAC M. MITTENTHAL, Respondent, v. GREENEBAUM SONS SECURITIES CORPORATION, Appellant.

Judgment and order reversed, with costs, and motion denied, with ten dollars costs, upon the ground that it sufficiently appears that questions of fact are involved. Present — Finch, Merrell, Martin, O'Malley and Sherman, JJ.; Merrell and Martin, JJ., dissent.

MERRELL, J. (dissenting). The action is brought to recover of defendant the sum of $16,335, besides interest, under an alleged agreement entered into between plaintiff and one Ed. A. Stern, vice-president of the defendant, whereby defendant contracted and agreed to repurchase from plaintiff certain mortgage bonds, the issues of which were sponsored by the defendant company, which was engaged in the business of selling denominational mortgage bonds. The alleged agreement bound the defendant to repurchase said bonds prior to maturity at one point or one per cent less than the par value of said bonds, plus accrued interest on the bonds so purchased. It appears from the affidavits that Greenebaum Sons Securities Company, with whom plaintiff dealt, was a New York corporation, whereas another corporation known as Greenebaum Sons Securities Corporation was an Illinois corporation of standing and reputation, and that for some time the Illinois corporation had advertised that it was organized in 1855 or 1865. Plaintiff understood he was dealing with such corporation, but it developed that he was dealing with the New York company of the same name as the Illinois corporation, which company was formed December 29, 1925. Plaintiff, in his dealings with the defendant company, did not notice the slight difference in the names. Just what the relationship is between the New York company and the Illinois corporation is not apparent, although the answer to the complaint is verified by M. E. Greenebaum, an officer of the Illinois corporation, and at the close of the argument of this appeal counsel for appellant admitted that the firm of attorneys appearing for appellant herein was employed to bring the appeal and to prosecute the same by the Chicago corporation. Plaintiff, in his affidavit

in support of his motion to strike out the answer as sham and for summary judgment, states that he is an elderly man and has retired from active business for a number of years and that he derives his support from interest on mortgage bonds of a number of companies, including those sold him by defendant; that all of deponent's transactions with defendant were had with one Ed. A. Stern, vice-president of the defendant company, and that the bonds which plaintiff agreed to purchase and which were thereafter delivered were all mortgage bonds of issues sponsored by defendant, which is engaged in the business of selling denominational mortgage bonds; that as an inducement to plaintiff to purchase said bonds, Mr. Stern agreed that defendant company would repurchase any or all of said bonds from plaintiff upon plaintiff's demand at any time prior to their respective dates of maturity at a loss of one point (by which both plaintiff and defendant understood at a loss of one per cent) plus accrued interest on each bond so purchased, and " that deponent insisted each time that he arranged to purchase said bonds through Mr. Stern, that said repurchase arrangement applied to each bond or batch of bonds purchased by him and Mr. Stern in each case agreed to such condition." Plaintiff further states in his affidavit that the first purchase of bonds was $2,000 of the bonds of Court-Livingston Office Building, and that thereafter the bonds embraced in such original purchase matured and were paid off, and that plaintiff then purchased additional bonds from defendant company, insisting at the time of each purchase of bonds that the defendant promise that it would repurchase each of said bonds at any time before maturity at one point under the respective par value, plus accrued interest, and that on the occasion of each purchase of bonds such promise was given unequivocally. Plaintiff further states that when some of the companies and mortgagors defaulted in the payment of interest, he was compelled to seek out the defendant company in order to resell it some of the bonds which he had previously purchased from defendant, and that on or about December 13, 1929, plaintiff went to defendant's office at 535 Fifth avenue and spoke to Ed. A. Stern, vice-president, who had personally sold him all of the bonds and who had agreed to repurchase them as above outlined, and that plaintiff asked Mr. Stern on behalf of defendant to repurchase the bonds enumerated in a schedule which is annexed to the complaint as Exhibit A, and which bonds had a par value of $16,500; that Mr. Stern said that the defendant company declined to repurchase any of said bonds and that plaintiff thereupon reminded Mr. Stern that the bonds were purchased on the condition that they would be repurchased upon demand; that in reply thereto Stern answered that he was sorry but that the defendant company had since changed its policy; that thereafter and on December fourteenth plaintiff consulted his attorneys, and was by them advised that it would be necessary to make a formal tender of the bonds before suit could be commenced, and on December seventeenth plaintiff, together with Isidor Bregoff, one of his attorneys, went to the office of the defendant company in New York city and were greeted by Mr. Stern of the defendant company, and that in the presence of plaintiff Mr. Bregoff said: " Mr. Stern, I am a member of the firm of Rubien & Bregoff, attorneys for Mr. Mittenthal in this and other matters. We understand that you sold Mr. Mittenthal bonds with the understanding that you would repurchase them any time upon his demand at a discount of one point together with accrued interest," to which Mr. Stern said that was so, and that he stated: " I have already spoken to Mr.

Mittenthal about it," and that Mr. Bregoff then said: " Well, we are here at this time to present this letter to you as part of our tender. If we do not tender you these bonds legally you might claim that in refusing to repurchase them it was so much conversation. But we have here the bonds," and tendered the batch of bonds which plaintiff had previously compared with the schedule attached to the complaint; that thereupon Mr. Stern said: " I know that Mr. Mittenthal has these bonds and it is not necessary for me to examine each one and check them. I have already told him that we do not care to make a market for these bonds," and that Bregoff replied: " We are not interested in whether you make markets or not. We just want to know whether this firm Greenebaum Sons Securities Corporation is willing to repurchase these bonds and to pay us the face amount less 1 % plus accrued interest," and to this Stern said: " We cannot do so." The answer of the defendant is verified, as before stated, by M. E. Greenebaum in Cook county, Ill., and consists merely of denials of certain allegations of the complaint. The denials in the answer verified by Greenebaum were upon information and belief, said denials putting in issue the allegation of the amended complaint as to the agreement to repurchase the bonds in question at par value less one per cent plus accrued interest on each bond. The answer also upon information and belief denies the allegations of the complaint that the plaintiff was, at the time of demanding repurchase of the bonds, prepared to deliver the same to the defendant and also denies that plaintiff performed all the conditions of such contract on his part. Prior to service of the answer and when the original complaint was served the defendant made a motion to strike out the complaint for insufficiency and upon the ground that the alleged agreement was not in writing and void under the Statute of Frauds, and that the action was brought for specific performance of an alleged agreement. Defendant's motion to strike out the complaint for insufficiency coming on to be heard was denied at Special Term, whereupon counsel for defendant stated to plaintiff's attorney that he expected to appeal from the order denying his motion to strike out the complaint on the ground that the action was for specific performance. Thereupon it was agreed between the attorneys for the respective parties that plaintiff should serve an amended complaint eliminating the demand for specific performance and claiming only money damages. Such an amended complaint was in fact served and the answer above referred to was served by defendant. Defendant's motion to strike out plaintiff's complaint for insufficiency was based upon the affidavit of Ed. A. Stern, stated in the record to be verified on January 4, 1929 (probably January 4, 1930). In the affidavit Stern states that he is vice-president of defendant and that the summons and complaint were served on him on December 23, 1929; that the allegations of the complaint and the relief sought in the action were specific performance of an alleged agreement. He then states: " So far as deponent knows the alleged agreement to repurchase the said bonds was not in writing nor is it alleged to be in writing in the complaint. None of the several instances which would take an oral agreement of this kind out of the provisions of the Statute of Frauds is alleged in the complaint such as part demand of the purchase price or part delivery of the bonds, nor so far as deponent knows, has any such incident surrounded the alleged agreement. It is, therefore, respectfully submitted that a failure on plaintiff's part to show that the contract to repurchase the said bonds was in writing or that some other feature to take the

agreement out of the domain of the Statute of Frauds had been complied with, is vital to his cause of action, and it is, therefore, respectfully submitted that the complaint should be dismissed and that judgment dismissing the complaint should be entered in favor of defendant." It is very significant that nowhere in this affidavit of Stern does he deny the making of the alleged agreement. His sole ground for asking dismissal of the complaint was that the agreement not being in writing was unenforcible by reason of the Statute of Frauds. In plaintiff's affidavit to strike out the answer of the defendant the usual formal averments are set forth. Plaintiff's affidavit is supported by an affidavit made by Isidor Bregoff, his attorney, wherein Bregoff fully corroborates the plaintiff's statement as to what occurred on the visit made by plaintiff and Bregoff at the defendant's office on December 17, 1929, when said bonds were tendered to defendant. The affidavit of Bregoff fully sets forth the circumstances giving rise to the service of the amended complaint as hereinbefore outlined, and calls attention particularly to the fact that in the affidavit on which defendant moved to set aside the complaint for insufficiency there was no denial on the part of Stern that the agreement, as claimed by plaintiff, was, in fact, made; Stern's contention being merely that the alleged agreement was not in writing and was void and unenforcible under the Statute of Frauds. In opposition to plaintiff's motion to strike out the defendant's answer as sham and for summary judgment, the affidavit of Ed. A. Stern is presented. Therein he states that he was formerly vice-president of Greenebaum Sons Securities Corporation and that he held such office at the time of the transactions alleged in the complaint, and that he personally conducted the negotiations leading up to the sale of the bonds referred to and actually sold said bonds to plaintiff herein. The opposing affidavit of Stern was very adroitly drawn and must be read with care to fully understand just how far the denials of the answer made upon information and belief are supported by such affidavit. I will quote from Stern's affidavit as follows: " On one occasion, when the bonds in question were sold to the plaintiff herein I did have a conversation with him with respect to the repurchase of said bonds. This conversation, however, and the agreement which the plaintiff claims developed therefrom was not as is alleged in his complaint. What I told the plaintiff was that the defendant's policy was to repurchase bonds sold by it upon demand at any time prior to their respective dates of maturity for the respective par values thereof, less one point, plus accrued interest on each of said bonds if at the time such demand was made for repurchase the bond market was in a normal condition." It will be noted that the affidavit of Stern merely refers to one occasion when the bonds in question were sold to plaintiff and which undoubtedly was the first occasion when plaintiff entered into business relations with defendant. Stern refers to this conversation and the agreement which plaintiff claims developed therefrom. Nowhere in his affidavit does he deny the claim of plaintiff and the statement in plaintiff's affidavit that on the occasion of each purchase of bonds plaintiff exacted from defendant through its vice-president, Stern, the same promise and that on each occasion Stern agreed that before maturity the defendant would repurchase the bonds at a loss of one per cent plus accrued interest. Nowhere in his affidavit does Stern deny that on each occasion when the bonds were purchased the promise was made. He very adroitly refers to " one occasion " when he states that the agreement was to repurchase the bonds prior to maturity at par less one point plus accrued interest

if at the time such demand was made for repurchase the bond market was in a normal condition. A mere denial in defendant's answer is insufficient in law under the decisions of this court and of the Court of Appeals to oppose the granting of a motion to strike out as sham. The denials of the answer must be supported by affidavits showing that, in fact, the defendant has a real defense to plaintiff's cause of action. It is for the court to determine upon the pleadings and affidavits, upon a motion to strike out an answer as sham and for summary judgment in plaintiff's favor, whether the defense interposed has, in fact, any substance or whether the same is unsubstantial and is interposed for the purpose of delay. If the papers upon the motion satisfy the court that a defendant has a *bona fide* defense to plaintiff's cause of action, then the motion to strike out the answer as sham should be denied, but if, on the other hand, from the pleadings and the affidavits the court has reason to believe that the defense is without merit, then the answer should be stricken out and the plaintiff awarded the relief demanded. The question is one for the determination of the court upon the pleadings and affidavits. As was said by this court in *Dwan* v. *Massarene* (199 App. Div. 872, at p. 875): " * * * that the right of the defendant to a trial by jury depended upon there being a real issue to be tried; that the court had power to determine whether there was such an issue, or whether the apparent issue was fictitious and sham, not to try the issue if there was not one in truth as well as in form; and that the order decides, on most satisfactory proof supporting it, that the defense was destitute of truth and substance, and presented no real issue." In *General Investment Co.* v. *Interborough Rapid Transit Co.* (235 N. Y. 133) the Court of Appeals (at pp. 142 and 143), referring to rule 113 of the Rules of Civil Practice, stated: " The rule in question is simply one regulating and prescribing procedure, whereby the court may summarily determine whether or not a *bona fide* issue exists between the parties to the action. A determination by the court that such issue is presented requires the denial of an application for summary judgment and trial of the issue by jury at the election of either party. On the other hand, if the pleadings and affidavits of plaintiff disclose that no defense exists to the cause of action, and a defendant, as in the instant case, fails to controvert such evidence *and establish by affidavit or proof that it has a real defense* and should be permitted to defend, the court may determine that no issue triable by jury exists between the parties and grant a summary judgment." (Italics are the writer's.) In *Richard* v. *Credit Suisse* (242 N. Y. 346) Judge Cardozo, writing for the Court of Appeals, said (at the bottom of p. 349): " Defendant insists that the plaintiffs' allegations of default are placed in issue, at least formally, by the denials of the answer, and that the supporting affidavits upon the motion for summary judgment do not establish the breach with technical precision. We are unanimous in holding that this issue is unreal. * * * The very object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of a trial." In *Curry* v. *Mackenzie* (239 N. Y. 267) Judge Cardozo, writing for the Court of Appeals, prefaces his opinion with the following statement: " Civil Practice Rule 113 permits summary judgment at times in favor of a plaintiff though material averments of his complaint have been traversed by the answer. To that end there must be supporting affidavits proving the cause of action, and that clearly and completely, by affiants who speak with

knowledge. There must be a failure on the part of the defendant to satisfy the court ' by affidavit or other proof ' that there is any basis for his denial or any truth in his defense. The case must take the usual course if less than this appears. To justify a departure from that course and the award of summary relief, the court must be convinced that the issue is not genuine, but feigned, and that there is in truth nothing to be tried. (*General Investment Co.* v. *Interborough R. T. Co.*, 235 N. Y. 133.)." Beyond question the moving affidavits of the plaintiff were sufficient to establish his cause of action. The affidavits in opposition to plaintiff's motion, to my mind, do not disclose any basis for defendant's denial of the allegations of plaintiff, nor do they support the bare denials contained in the answer. The tacit admission by defendant's vice-president, Stern, of plaintiff's allegation that the defendant made the contract sued upon, by failure of defendant's vice-president to deny that such contracts were made when first called upon to meet plaintiff's allegations on defendant's motion to strike out the plaintiff's complaint, taken with the failure of Stern, upon plaintiff's motion for summary judgment, to deny the agreements upon which plaintiff sued, except in the qualified manner hereinbefore mentioned, was, I think, entirely sufficient to justify the Special Term in determining that the defendant had presented no facts showing the existence of a real issue. I think the court below was justified in reaching that conclusion. Even assuming the agreement was made as claimed by Stern, such agreement must be taken to refer to the original purchase of the $2,000 of the Court-Livingston Office Building bonds, which bonds are not involved in this litigation, they having matured and been paid. The statement contained in the opposing affidavit herein that at no time was any purchase made exceeding $2,000 of the bonds from the defendant undisputed, and even though the statement contained in the affidavit of Stern that on one occasion the defendant agreed to repurchase under the conditions mentioned if the market was in normal condition be taken as true, such agreement can only refer to the purchase of $2,000 of bonds, and that in such event plaintiff would be entitled to partial summary judgment under rule 114 of the Rules of Civil Practice. But I do not think there is any defense whatever to the plaintiff's cause of action. It is asserted in the moving affidavit that the defendant had gone out of business, " folded up " as the expression of the street is, and had departed from the jurisdiction. Counsel for defendant, appellant, admitted at the trial that the defendant company was insolvent. Therefore, probably the judgment which plaintiff obtained and entered pursuant to the order appealed from is without value. I do not think there is any *bona fide* defense to plaintiff's cause of action. Certainly the affidavits filed in opposition to plaintiff's motion do not support the denials contained in the answer. The answer is clearly sham, interposed for the purpose of delay, and was properly stricken out. The order and judgment appealed from should be affirmed, with costs. Martin, J., concurs.