RAYMOND HEADWELL, Doing Business as TRANSCEIVER CENTERS OF THE CAPITOL DISTRICT, Respondent, v. PAUL SANDLER, Doing Business as TRANSCEIVER EAST, INC., et al., Appellants.

Third Department, February 20, 1975.

*Warshaw, Sylvester, Burstein & Franks* (*Donald L. Kuba* of counsel), and *De Graff, Foy, Conway & Holt-Harris* for appellants.

*Tate & Tate* (*Rex Ruthman* of counsel), for respondent.

GREENBLOTT, J. Plaintiff seeks money damages and injunctive relief for an alleged breach of a license agreement made between plaintiff and defendant Transceiver Corporation of America (hereinafter referred to as " TCA "). The motion for summary judgment against plaintiff by defendant Transceiver East, Inc., was denied.

TCA is engaged in a business dealing with transmission of copies of documents over telephone wires from one transmitting center to another. The corporation has established a national network of " transceiver centers " which utilize facsimile transceiving machines to send and receive certain documents, specifically being truck permit applications for use by trucking companies. The procedure utilized by TCA is to install and operate such centers directly in some areas of the country, while designating certain licensees to install and operate the equipment in other areas.

Plaintiff Headwell purchased such license rights from TCA in October, 1968 which allowed plaintiff to establish 11 transceiver centers within the Counties of Albany, Schenectady and Rensselaer. This agreement provided for an initial term of one

year, which would be renewable thereafter on a yearly basis, and the terms of the agreement suggest that renewal would be automatic unless the licensee " terminate[s] his license, by setting forth his cause in writing ". The number of transceiver centers that could be licensed in any one county was restricted by that county's population, the ratio being one license for every 50,000 people and, according to testimony as to the population of the three counties, the maximum number of licenses permitted in the area would be 11.

Plaintiff Headwell thereafter established a company called " Transceiver Centers of the Capitol District " to operate his 11 centers under his personal licensing agreement. In December, 1970, Xero-Fax, Inc., a company owned and controlled by Headwell, assumed the lease obligations and the assets of Transceiver Centers of the Capitol District and set up new centers which allegedly competed with TCA. Xero-Fax, Inc., sent contracts and letters to various licensees of TCA apparently attempting to set up a " working relationship " with these licensees outside of the TCA system. While Transceiver Centers of the Capitol District formally remained in existence, it ceased active business, but Headwell in his individual capacity never officially terminated his license.

In June, 1971 defendant Transceiver East, Inc., a company owned and controlled by defendant Sandler, obtained a letter of agreement from TCA allowing it to install and operate transceiver centers in Albany, Schenectady and Rensselaer Counties, the same area covered by Headwell's license with TCA. Headwell instituted this action claiming that Transceiver East, Inc., wrongfully engaged in business in his license area, and seeking damages and injunctive relief.

The basis of Headwell's action is his assertion that as the holder of the 1968 licensing agreement from TCA, he possesses " exclusive " rights to operate in the tri-county area within the TCA system. Defendants in their answer, in addition to denials, set forth six affirmative defenses, which fall generally into two categories. First, it is asserted that plaintiff never had nor obtained exclusive rights. Second, it is urged that in ceasing to do business as Transceiver Centers of the Capitol District, and in operating as Xero-Fax, Inc., plaintiff either abandoned the license at least after 1970 or committed a breach of the 1968 agreement so as to estop him from seeking its enforcement.

The issue presented here is the propriety of Special Term's order denying the motion for summary judgment. In *Meth* v. *Kolker* (39 A D 2d 651, 652, affd. 33 N Y 2d 780), it was stated:

'' When no material issue of fact exists and the undisputed facts establish that a party is entitled to judgment as a matter of law, summary judgment should be granted. (See *Richard* v. *Credit Suisse,* 242 N. Y. 346, 349–350; *Leumi Fin. Corp.* v. *Richter,* 24 A D 2d 855, affd. 17 N Y 2d 166.) '' Thus, in order to warrant summary judgment, defendants must conclusively prove that plaintiff's claims are without merit and that no material issues of fact exist.

Since issues of fact are raised by the denials of the allegations in plaintiff's complaint, defendants can prevail only by conclusively establishing either that plaintiff did not have exclusive rights or that plaintiff either abandoned his license or breached the contract in such a manner as to require, as a matter of law, that plaintiff be estopped from enforcing said agreement.

Resolution of the first issue is, in the framework of a motion for summary judgment, relatively easy. The provision of the license agreement, noted above, restricting the number of licenses which could be issued on the basis of population in a county can be interpreted to mean that exclusive rights are vested in any licensee purchasing the maximum number of permitted licenses. Defendants, at this stage of the proceedings, have not shown that this interpretation is improper, nor have they demonstrated that more than 11 licenses could rightfully have been issued in the Albany-Schenectady-Rensselaer County area.[1] Thus, defendants have not demonstrated that plaintiff's rights were nonexclusive.

This brings us to consideration of whether defendants have established either that plaintiff abandoned his licenses or committed breaches of contract of such a substantial nature as to deprive him of the right to enforcement of its provisions. Some

---

1. Plaintiff also contends that its license rights became exclusive pursuant to the terms of a settlement agreement entered into in 1971 in Federal District Court in the Southern District of Ohio in litigation involving TCA and various licensees including Headwell. Although Headwell, doing business as Transceiver Centers of the Capitol District was dismissed from the action without prejudice, TCA agreed that "all License Agreements * * * except those involved in local litigation between TCA and a licensee on or prior to February 1, 1971, are to be made exclusive." There is disagreement between the parties as to whether plaintiff's license became exclusive as a result of this settlement, because of Headwell's dismissal from the litigation, and because while Headwell and TCA were involved in "local litigation" in New Jersey prior to February 1, 1971, it appears that the 1968 license agreement was not brought into that action until the filing of an amended complaint in April of 1971. Thus, if it is determined that the license agreement itself did not give plaintiff exclusivity, we are of the view that the effect of the settlement agreement raises issues of fact, resolution of which requires trial.

background is required. The original license agreement imposed a number of obligations upon the licensee including, *inter alia*, the following:

"12. Not to use or promote other Licensees or the TRANS-CEIVER SYSTEM for any business purpose other than the use and promotion of the TRANSCEIVER SYSTEM and the transmission of documentary and graphic materials for the benefit of transmitting and receiving customers. * * *.

"15. Not to commit or participate in any prejudicial, injurious or competitive act to TRANSCEIVER, its Licensees and the TRANSCEIVER SYSTEM for so long as Licensee remains as such and for two years after cancellation of License for any reason. * * *

"19. To use his best efforts to advertise, promote, and expand the TRANSCEIVER SYSTEM to the mutual benefit of Licensee and TRANSCEIVER."

In April of 1969, TCA notified all licensees that provision 15, among others, was no longer in effect. Thus, the negative covenant against competitive acts was stricken, but there remained in effect provisions 12 and 19. However, it does not appear that at this stage of the proceedings it can be determined, as a matter of law, that Headwell's activities in connection with Xero-Fax, Inc., constituted a breach of these provisions of the nature urged by defendants. In dealing with this question, as well as the question of abandonment, an understanding of the course of litigation in New Jersey between plaintiff and TCA is instructive.

It appears that in or prior to 1970, TCA began to experience financial and other difficulties, as a result of which various agreements between TCA and licensees were entered into whereby TCA's own centers, not previously licensed, would thereafter be operated for TCA by licensees. One such agreement was entered into in April of 1970 by Headwell covering facilities in New Jersey, Connecticut, parts of Pennsylvania and, significantly, unlicensed portions of New York. In November of 1970, Headwell received from TCA a 30-day notice of cancellation of the 1970 agreement, which apparently TCA had a right to do. Thereafter, in March, 1971, Headwell through Xero-Fax, Inc., undertook the solicitation of licensees previously referred to, as a result of which TCA commenced an action in New Jersey charging Headwell with breach of the 1970 agreement.

The New Jersey court specifically noted that the question of whether Headwell had breached the 1968 contract in the licensed

territory — the very question in issue in the case at bar — was not put in issue by the pleadings and, therefore, could not be considered. However, the court did find, as there urged by TCA, that the 1968 agreement "did not terminate one year from its date, but continued in force and effect at least through 1970." It did not find, as TCA now asserts, that the agreement continued only through 1970. Thus, the New Jersey decision does not collaterally estop plaintiff from denying abandonment of the license, and defendants are not entitled to summary judgment on that question.

Turning now to the question of breach of contract, it appears that after cancellation of the 1970 agreement, Headwell continued to operate, through Xero-Fax, in the facilities previously covered by that agreement. Pursuant to the terms of that agreement, the New Jersey court found, Headwell was not prohibited from competing with TCA. The court then concluded that Headwell had not committed a breach of the 1968 agreement outside the licensed territory. The latter conclusion was premised upon a lack of evidence showing that any licensee or other person doing business with TCA had joined the Xero-Fax network, and a finding that TCA had not suffered actual damage in any way.

It thus appears that, to some extent at least, Xero-Fax was not prohibited from competing with TCA, at least outside the licensed area. Within the licensed area, it is important to note that the license had been issued to Headwell in his individual capacity, not to Transceiver Centers of the Capitol District. We, therefore, feel that it would be inappropriate to find at this stage of the proceedings that the transfer of business and assets from that corporation to Xero-Fax constitutes a breach of the 1968 licensing agreement per se. While Xero-Fax was apparently the instrumentality for solicitations of other licensees, which solicitations might constitute violations of the afore-mentioned provisions 12 and 19 of the 1968 agreement if those provisions are read alone, we cannot overlook the fact that Xero-Fax's activities have been held to have been at least not prohibited, if not expressly permitted, by the 1970 agreement which was executed by the same parties with knowledge of the prior agreement between them. The question thus presented, in other words, is whether activities undertaken pursuant to one agreement can constitute violations of a prior agreement. In the circumstances presented here, the fact that the 1968 agreement dealt solely with the licensed territory, while the 1970 agreement dealt with other territories, would not necessarily require those agreements to be considered independent

of each other. These are all questions raising factual issues necessitating trial.

It is also worthy of note at this point that, while a breach by Headwell of the 1968 agreement is claimed, it does not appear that TCA formally elected to notify Headwell of nonrenewal of his licenses, which TCA may have been obligated to do under that agreement. TCA thus may have waived any right to declare the contract at an end for the periods in issue. Such a finding should only be made, if necessary, after trial. For all the reasons stated herein, the order of the court at Special Term denying the motion for summary judgment was correct.

The order should be affirmed, with costs.

HERLIHY, P. J., KANE, MAIN and LARKIN, JJ., concur.

Order affirmed, with costs.